THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
GROVER WEBB, Defendant-Appellant.
Fifth District   No. 5—84—0028

Opinion filed June 3, 1986.

Walter H. Kasten, of Springfield, for appellant.

Barbara Adams, State's Attorney, of Hillsboro (Kenneth R. Boyle,
Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appel-
late Service Commission, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

Following a jury trial in the Montgomery County circuit court, the defendant, Grover Webb, was found guilty of perjury and official misconduct. On appeal, the defendant contends that the State failed to prove him guilty beyond a reasonable doubt of official misconduct. We reverse.

The alleged perjury and official misconduct concerns the defendant's testimony offered at the trial of Guy Levine (People v. Levine, cause No. 78—CF—30).

On Sunday, May 28, 1978, between the hours of 1 p.m. and 1:15 p.m., a man driving a silver and white El Camino abducted and sexually assaulted Rick Jenkins, in Litchfield, Illinois. A few days later, Guy Levine was charged with and arrested for the crime.

When Beverly Delong, Levine's daughter, heard about the arrest, she called the defendant and inquired about the charges. The defendant had known Mrs. Delong since 1975 and had at one point dated her. During 1977 to 1979, the defendant and Mrs. Delong saw each other about twice a month. After her call, the defendant telephoned the Montgomery County State's Attorney, Kelly Long. Mr. Long stated that the defendant was only making an inquiry and he did not think anything unusual about the telephone conversation.

After the defendant spoke with Mr. Long, he met with Mrs. Delong at Lake Springfield and told her the charges against her father. At that time, the defendant did not discuss the charges or tell her that he was going to testify. Mrs. Delong found out after the trial that the defendant had testified at her father's trial.

After the defendant's call to Mr. Long, he saw Levine and told him that he had seen him on the date and at the time in question. In April 1979, Mr. Levine's attorney contacted the defendant. The defendant gave Levine's attorney a statement of what he had observed on May 28, 1978. The defendant had discussed the matter with Mr. Long. Eventually, the defendant was served a subpoena by the State to appear as a witness in the Levine trial.

On December 11, 1979, the defendant appeared at Levine's trial. Since the defendant was a special agent with the Department of Law Enforcement (Department), he was wearing a gun which he promptly gave to the clerk. After he stated that he was presently employed as a special agent for the Department, the State stipulated to the rest of his credentials. In his testimony, he stated that he was familiar with Levine. He also stated that on May 28, 1978, he saw Levine and his El Camino in Springfield between the hours of 1:15 p.m. and 1:45 p.m. and later that day he saw the El Camino and not Levine be-

tween 2:30 p.m. and 2:45 p.m. at the same location. He remembered the time because he was on his way to a local bar that opened at 1 p.m. on Sunday. His route to and from the bar took him by Levine's residence. About a week later, Mrs. Delong contacted him regarding the charges against her father. After the phone conversation, the defendant called State's Attorney Long to find out more about the charges. Later, the defendant contacted Long again and told him that he had seen Levine at the time in question.

Under cross-examination, the defendant stated that he met Levine when he was looking for an apartment. He stated that he did not have any business dealings with Levine and did not consider Levine a friend. He had talked to Levine on several occasions. Furthermore, the defendant wanted to help Levine because Levine had given him information on some of his own cases. However, he said Levine was not a confidential source and none of his information led to any arrests.

Three days later, the defendant pursuant to orders wrote a memorandum regarding his observations of Levine on May 28, 1978, and all conversations with State's Attorney Long. The memorandum was addressed to the defendant's superior McGrew. Copies of the memorandum were sent to assistant deputy director Gerald J. Schilling and area III Commander Kenneth R. Metcalf, both with the Department.

Soon after the jury found Levine guilty, William Dolahite, Litchfield chief of police, went to the Department in Springfield and informed them of his belief that the defendant had perjured himself at the trial. Dolahite heard the defendant's testimony and retraced the defendant's route and concluded that the defendant could not have traveled around Springfield as he claimed.

It was not until April 22, 1981, that the Department began an investigation. On that date, the Department interviewed Beverly Delong regarding her relationship with the defendant. On December 14, 1982, the Department interviewed the defendant. The defendant explained his relationship with Levine and Mrs. Delong and stated his testimony at trial.

The defendant was interviewed again on December 16, 1982, by the professional standards division of the Department. At that time the defendant signed a waiver of counsel and his administrative proceedings rights. The investigators then asked the defendant in detail the same matters discussed on December 14, 1982. The same investigators questioned the defendant again on December 27, 1982.

After the December 27 interview and continuing into March 1983, the Department did a more intensive investigation. They conducted

interviews of the people who were in attendance at a graduation party in Perryville, Missouri, the same one at which the defendant attended. After the interviews, the Department concluded that the defendant had been in Perryville and not in Springfield during the time in question as he had claimed.

On March 31, 1983, the grand jury returned a bill of indictment charging the defendant with official misconduct and perjury. On September 21, 1983, the defendant's jury trial began. Prior to the trial, the defendant filed a motion to dismiss count I—perjury—on the ground that the statute of limitations precluded prosecution but the court denied the motion.

The defendant contends that the State failed to prove him guilty beyond a reasonable doubt of official misconduct. Under section 33—3(b), as charged in this case, the defendant must have committed the misconduct while in his official capacity and knowingly have performed an act which he knows he is forbidden by law to perform. (Ill. Rev. Stat. 1983, ch. 38, par. 33—3(b).) A police officer need not have corrupt motives in order to commit official misconduct (*People v. Thoms* (1977), 50 Ill. App. 3d 398, 403, 365 N.E.2d 717, 720-21) or be on duty in order to perform an act within his official capacity (*People v. Steinmann* (1978), 57 Ill. App. 3d 887, 897, 373 N.E.2d 757, 764). Furthermore, this court has determined that the statute seeks "to reach those situations where a public officer or employee has in some fashion exploited his official position to the detriment of the public good." *People v. Steinmann* (1978), 57 Ill. App. 3d 887, 897, 373 N.E.2d 757.

In *People v. Steinmann*, the court found that the police officer's possession and eventual sale of a gun seized during the performance of his official duty was not official misconduct. The court stated that the officer's actions prior to the sale did not reveal the necessary "mens rea" to convict him. The defendant initially received possession of the gun while on duty during an incident involving a public official. After a town meeting regarding the incident, the defendant stated that the owner gave him the gun. While the defendant's eventual sale was based on a somewhat unjustified misunderstanding that it was his to sell, the court did not find his actions dishonest. In *Steinmann*, the facts revealed a closer case of official misconduct than do the facts at hand reveal.

In this case the defendant was subpoenaed as a witness by the State. The defendant was not called as an investigator on the case and was never involved in the case. Also, the defendant's observations of Levine were neither on duty nor as part of an investigation.

If he had not stated that he observed Levine on the date and time in question, he would not have been called. Removing of his gun in court and stating his present employment at trial were part of the usual procedures followed in a trial.

Furthermore, the defendant could not have received any benefit as the State contends. The defendant stated that although Levine provided information to him regarding some of the cases he was investigating, none of the information led to arrests. Also, Levine was never considered a confidential informant. Also, there was no evidence presented at trial to show that Levine was an important and significant source of information in any past or present cases of the defendant.

To extend the statute to include this situation would place all public officers' and employees' actions as part of their official capacity. In this case, all of the defendant's actions were done in his individual capacity and not in his official capacity. Therefore, the State failed to prove the defendant guilty beyond a reasonable doubt of official misconduct.

Regarding the perjury charge, this court finds that the State was barred by the statute of limitations. The defendant committed the alleged offense of perjury on December 11, 1979, but the State did not charge the defendant until March 31, 1983. Thus, the State failed to institute the action within the required three year period as prescribed in section 3—5 (Ill. Rev. Stat. 1983, ch. 38, par. 3—5). Furthermore, the State cannot rely on section 3—6(b) to extend the statute of limitations. (Ill. Rev. Stat. 1983, ch. 38, par. 3—6(b).) Under section 3—6(b), the period is extended where an offense is based upon misconduct in office. However, the State in this case failed to meet its burden regarding the official misconduct offense. Thus, section 3—6(b) is inapplicable.

Since this court has found that the State failed to prove the defendant guilty beyond a reasonable doubt of official misconduct, this court does not find it necessary to discuss the defendant's remaining issue.

For the foregoing reasons, the judgment of the circuit court of Montgomery County is reversed.

Reversed.

JONES and HARRISON, JJ., concur.