FIRST DIVISION 

August 7, 2000

No. 1-97-2044

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

GREGORY BECKER,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Robert W. Bertucci,

Judge Presiding.

PRESIDING JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Following a jury trial, defendant, Gregory Becker, a Chicago police officer was convicted of one count of armed violence (720 ILCS 5/33A-2 (West 1994)), one count of involuntary manslaughter (720 ILCS 5/9-3(a) (West 1994)) and three counts of official misconduct (720 ILCS 5/33-3(a),(b) (West 1994)) involving the shooting death of Joseph Gould.  On appeal, defendant asserts that: (1) his armed violence conviction was improperly based upon the same conduct found to be unintended by the jury's simultaneous verdict of guilty on involuntary manslaughter; (2) the verdicts for involuntary manslaughter and armed violence were legally inconsistent because their respective mental states of recklessness and knowledge were mutually inconsistent; (3) his armed violence charge constituted an impermissible double enhancement; (4) the indictment did not sufficiently allege a charge of armed violence; (5) the section 33-3(a) official misconduct conviction violated his fifth amendment privilege against compulsory self-incrimination; and (6) the State failed to prove him guilty beyond a reasonable doubt of official misconduct and armed violence where the acts performed were in his individual, not official, capacity.  For the reasons set forth below, we affirm in part, reverse in part, and remand.

I. FACTS

After dismissing 7 counts of the original 13-count indictment, the State proceeded to trial on the following counts against defendant: count I, armed violence; count II, involuntary manslaughter; count V, section 33-3(a) official misconduct; and three counts of section 33-3(b) official misconduct under counts IX, XII and XIII.  Count I alleged defendant committed armed violence in that he, while armed with a handgun, committed official misconduct.  Count II alleged that defendant committed involuntary manslaughter in that he without lawful justification, acting in a reckless manner, unintentionally killed Joseph Gould when he discharged a handgun in the presence of Joseph Gould, causing a fatal gunshot wound to Gould's head.  Count V alleged section 33-3(a) official misconduct in that defendant intentionally or recklessly violated Rule 6 of Article V of the Rules and Regulations of the Chicago Police Department by failing to follow procedures after discharging his firearm.  Count IX alleged that defendant knowingly violated Rule 38 of Article V when he unnecessarily displayed his weapon and struck Joseph Gould with the weapon.  Count XII alleged defendant knowingly violated Rule 9 of Article V when he engaged in an unjustified physical altercation using excessive force with Joseph Gould.  Count XIII alleged that defendant knowingly violated Rule 9 when he engaged in an unjustified physical altercation with Joseph Gould. 

At trial, the testimony indicated that on July 30, 1995, at 12:30 a.m., the defendant was off duty from his job as a Chicago police officer.  Defendant and his girlfriend, Joey Preston, left America's Bar in Chicago and began to walk toward the defendant's car, parked on the corner of Huron and Franklin Streets.  Defendant and Preston walked down Franklin Street, Joseph Gould approached them, and Gould engaged Preston in a conversation while defendant walked ahead of them.  Preston yelled at Gould and told him to leave her alone, but Gould refused.  Preston and Gould caught up to the defendant and the defendant told Gould to get away.  Defendant and Preston then crossed Franklin with Gould just behind them.  When they reached defendant's car, defendant walked to the trunk of the car and then walked back toward Gould.  The defendant and Gould were facing each other.  According to the State's witness, defendant, with a black object in his hand swung his arm towards Gould's face.  A gun went off, and Gould fell to the ground.  Defendant entered his car and left.  Gould died from a single gunshot wound to the head.  The police arrested him at his home and recovered the 9 millimeter weapon used in the shooting.

Charles Roberts testified that he was the assistant deputy superintendent for training for the Chicago police department.  Roberts stated that defendant was trained at the Chicago Police Department Training Academy, where defendant received a copy of the rules and regulations of general and special orders of the Chicago police department.  The rules and regulations govern the conduct of a police officer both on and off duty.  Defendant was trained in the use of force, use of a weapon, and the requirement to notify his supervisor immediately upon discharge of his weapon.  He was taught that his gun was never to be used as an impact weapon.

Lieutenant James K. Hickey testified that he was the commander in charge of the policy and procedure section of the research and development division for the Chicago police department.  Lieutenant Hickey testified that General Order 85-1, in effect on July 30, 1995, required a police officer whether on or off duty at the time when he discharged a firearm to: (1) notify immediately the communications section and desk sergeant of the district where the firearm is discharged; (2) attend to required emergency assistance; (3) assist and provide information to department members investigating the discharge; (4) perform required duties including filing reports; and (5) submit a firearms use report to the watch commander without unnecessary delay.

Lieutenant Hickey testified to general orders in effect on July 30, 1995, which governed the conduct, demeanor, and use of nondeadly and deadly force by a police officer.  According to the general orders, a police officer should only use deadly force when he reasonably believes such force is necessary to prevent death or great bodily harm to himself or others.  Lieutenant Hickey stated that the general orders restrict a police officer's use of a firearm until all other means to apprehend and control an individual have been employed without success.  The use of a firearm in any case is a last resort measure.  The rules prohibit police officers from using excessive force while on or off duty and prohibit unjustified altercations of any kind with any person while on or off duty.  Hickey testified that an officer is expected "to render the highest order of police service to all citizens, whether or not during specifically assigned hours." 

Defendant testified that while walking from America's Bar to his car with Preston, Gould asked him for money.  Defendant refused the request.  Gould followed them for about a half block and was agitated, mumbling continuously.  Preston yelled at Gould to get away from her.  Defendant told Gould to stay away from them or he would lock Gould up because he was a Chicago police officer.  Gould then told defendant that he would "kick his ass."  When Preston and defendant reached defendant's car, defendant went to the trunk and got Preston's purse and his gun.  Defendant stated that he was putting the gun in his waistband when Gould pulled on his jacket.  

Both Gould and defendant pulled at the gun, defendant lost balance, and a struggle ensued over the weapon.  Regarding the struggle defendant testified that Gould "pulled me off balance.  I think I grabbed onto the shirt.  He was pulling on it.  I was pulling back.  Excuse me.  And I was just trying to get, gain control of it, and then I think it hit him in the head once, and then he pulled it back again, and I, when I pulled it, I extended my whole arm and I pulled back, and the gun fired."  Defendant stated that he unintentionally pulled the trigger when he was trying to gain control of the gun.  He testified that the gun was fully loaded, a bullet was in the chamber and the external safety was not engaged.  After the gun went off, Gould fell to the ground but defendant testified that he did not believe Gould was shot.  He and Preston drove to Preston's apartment, and he did not notify the police regarding the discharge of his weapon or the incident.

The State proceeded to trial on six counts of the indictment; however, when instructing the jury, count XII and count XIII were combined and the jury received the following five verdict forms: (1) armed violence predicated on section 33-3(b) official misconduct charge alleging defendant's unjustified altercation with Gould; (2) involuntary manslaughter; (3) section 33-3(a) official misconduct; (4) section 33-3(b) official misconduct based on defendant's unnecessary use or display of his weapon; and (5) section 33-3(b) official misconduct based on defendant's unjustified altercation.  The jury found defendant guilty on all counts, including armed violence, involuntary manslaughter, and the three counts of official misconduct.  The trial court merged the two section 33-3(b) official misconduct convictions into the armed violence conviction and sentenced defendant to concurrent sentences of 15 years on his conviction for armed violence, 5 years for involuntary manslaughter, and 5 years for the section 33-3(a) official misconduct.  

The armed violence statute under which defendant was originally sentenced was part of Public Act 88-680 commonly known as the Safe Neighborhoods Law (Pub. Act 88-680 eff. January 1, 1995).  In 
People v. Cervantes
, 189 Ill. 2d 80, 91 (1999), the supreme court declared Public Act 88-680 unconstitutional in that its provisions lacked a natural and logical connection and therefore violated the single subject clause of the Illinois Constitution.  Public Act 88-680 included a provision increasing the minimum sentence for armed violence committed with a handgun from a minimum of 6 years to a minimum of 15 years (See 720 ILCS 5/33A-3(a)) (West 1996)).  When an act is declared unconstitutional, the state of the law is as if the act had never been passed.  
In re G.O.
, 191 Ill. 2d 37 (2000).  As the result of Public Act 88-680 being declared unconstitutional, the original armed violence statute providing a 6 year minimum sentence applied to defendant's armed violence conviction.  Since the 
Cervantes
 ruling, the trial court resentenced defendant to 10 years for armed violence based on the sentencing provisions in effect before the enactment of Public Act 88-680.  (See 720 ILCS 5/33A-3 (West 1992)).

 II. OFFICIAL MISCONDUCT AS A PREDICATE

FELONY FOR ARMED VIOLENCE 
 

Defendant contends that his conviction for armed violence must be vacated because the armed violence conviction was based on unintentional and undeterrable conduct.  Defendant argues that the State used the section 33-3(b) official misconduct charge as a predicate felony only because the State was precluded by law from using involuntary manslaughter as a predicate felony.  See 
People v. Fernetti
, 104 Ill. 2d 19, 25 (1984).  Defendant further contends that the conduct underlying the official misconduct charge was the same conduct underlying the involuntary manslaughter charge and, therefore, was not a proper predicate for the armed violence charge.

The Criminal Code of 1961 (Code) provides that "[a] person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law."  720 ILCS 5/33A-2 (West 1994).  An issue of statutory interpretation is a question of law 
and our review is 
de novo
.  
People v. Krause
, 273 Ill. App. 3d 59, 62 (1995).  The plain language of a statute is the best indicator of legislative intent.  
People v. Scharlau
, 141 Ill. 2d 180 (1990).  Our supreme court, under certain circumstances, has limited the type of felonies contemplated by the "any felony" language of the armed violence statute.  Finding the words, "any felony" within the armed violence statute ambiguous, the supreme court has held that the offenses of voluntary and involuntary manslaughter cannot serve as predicate felonies for an armed violence charge and conviction because the legislature never intended for the armed violence statute to apply to conduct that is not deliberate.  
People v. Alejos
, 97 Ill. 2d 502, 509 (1983); 
Fernetti
, 104 Ill. 2d at 24-25 (1984).

In 
Alejos
, the court noted that the presence of a weapon enhances the danger that any felony that is committed will have deadly consequences should the victim offer resistance.  
Alejos
, 97 Ill. 2d at 508.  Thus the court regarded the presence of a weapon as an aggravating factor that "enhances the severity of the underlying felony and upgrades the punishment available for it to Class X."  
Alejos
, 97 Ill. 2d at 508.  The court recognized that "stiff punishment mandated by the armed-violence provision is intended not only to punish the criminal and protect society from him but also to deter his conduct--that of carrying the weapon while committing a felony."  
Alejos
, 97 Ill. 2d at 509.  In 
Alejos
, the defendant was convicted of voluntary manslaughter and armed violence based on voluntary manslaughter.  The appellate court reversed the armed violence and remanded for sentencing on the manslaughter conviction.  The supreme court found 
that an individual who commits voluntary manslaughter, now second degree murder, has little, if any, intent to take a life or use deadly force; rather, the only "intent" that enters into the crime is the decision, arrived at without deliberation and usually instantaneously, to use force capable of killing.  
Alejos
, 97 Ill. 2d at 509.  Consequently, the supreme court held that voluntary manslaughter could not be a predicate felony for an armed violence conviction because the armed violence statute does not apply to conduct that is the result of passion or misconception and essentially undeterrable.  
Alejos
, 97 Ill. 2d at 509.  Based on that reasoning the supreme court affirmed the appellate court's reversal of the armed violence conviction and remanded for resentencing on the voluntary manslaughter conviction.  
Alejos
, 97 Ill. 2d at 514-15. 

In 
Fernetti
, the supreme court applied the 
Alejos
 reasoning to involuntary manslaughter and found that a charge of involuntary manslaughter could not be the predicate felony for an armed violence charge.  The court held that involuntary manslaughter constitutes conduct that by its nature is unintentional and therefore is not deterrable by the enhanced penalty provision under the armed violence statute.  
Fernetti
, 104 Ill. 2d at 25.  The court ordered the trial court to vacate the armed violence conviction and sentence and remanded for sentencing on the involuntary manslaughter conviction.  
Fernetti
, 104 Ill. 2d at 26.  

The Illinois supreme court next addressed this issue in 
People v. Drakeford
, 139 Ill. 2d 206 (1990), where the State charged defendant with murder and armed violence predicated on aggravated battery causing great bodily harm.  The jury, however, found defendant guilty both of armed violence and second degree murder.  Defendant argued that his armed violence conviction should be vacated because in returning a verdict of guilty for second degree murder the jury found that his conduct could not be deterred.  
The supreme court vacated the armed violence conviction and held that the armed violence conviction could not be predicated upon second degree murder because the legislature did not intend for "the armed violence statute to apply to conduct constituting second degree murder."  
Drakeford
, 139 Ill. 2d at 213.  

In 
Drakeford
, 
the court noted that the jury's verdicts of guilty for second degree murder and armed violence arose from the same criminal conduct.  
Drakeford
, 139 Ill. 2d at 215. 
 Therefore, once the jury found that defendant's conduct was unpremeditated and undeterrable, the defendant's penalty could not be enhanced under the armed violence statute.  
Drakeford
, 139 Ill. 2d at 213-14.  The court affirmed the judgment of the appellate court which had vacated the conviction for armed violence, affirmed the second degree murder conviction and remanded for sentencing on second degree murder.  
Drakeford
, 139 Ill. 2d at 216.  
Defendant urges us to extend 
Drakeford
 to the facts of this case and prohibit the State from enhancing defendant's sentence through an armed violence conviction because the jury found him guilty of involuntary manslaughter.  According to defendant, by predicating the armed violence charge on section 33-3(b) official misconduct, the State is violating the principles of 
Alejos
, 
Fernetti
 and 
Drakeford
 in applying the armed violence statute to undeterrable conduct.  

Defendant's official misconduct charge, which served as the predicate felony for the armed violence conviction, was for a knowing violation of police rules and regulations.  The purpose of the official misconduct statute is to compel public officials to act in a lawful manner and to maintain the public trust.  
Wright v. City of Danville
, 174 Ill. 2d 391, 404 (1996).  The statute provides that: "A public officer or employee commits misconduct when, in his official capacity, he * * *  (b) [k]nowingly performs an act which he knows he is forbidden by law to perform."  720 ILCS 5/33-3(b) (West 1994).

Here, there was evidence which demonstrated that defendant knowingly performed an act which he knew was forbidden by law when he engaged in an unjustified altercation with Gould.  The defendant had received training at the police academy regarding regulations that prohibited unjustified altercations with citizens.  Gould initially approached defendant and Preston.  Although asked to leave, Gould continued to follow defendant and Preston and a verbal confrontation began.  When defendant arrived at his car, defendant did not drive away, but deliberately went to the trunk of his car, retrieved and displayed his weapon, then struggled with Gould and struck Gould with his weapon.  Defendant knowingly engaged in a physical altercation with Gould while armed with his gun which escalated the possibility of violence and injury and ultimately ended in the death of the victim.  It is the use or presence of a weapon that increases the chances of violence, great bodily harm or death and justifies an enhanced penalty under the armed violence statute.

If the decision to use a weapon is not forced upon the defendant or a result of a spontaneous decision, then the defendant's conduct can be deterred and the purpose of the armed violence statute is satisfied.  
People v. Eure
, 140 Ill. App. 3d 387, 394 (1986).  Here, there was evidence that defendant knowingly engaged in both a verbal and a physical altercation with the victim and knowingly violated Chicago police department rules by deliberately choosing not only to arm himself but to display and use his weapon during the altercation.  The jury's guilty verdict on the section 33-3(b) official misconduct offense based on defendant's unjustified altercation with the victim indicates that the jurors found defendant's conduct to be a knowing violation of the law, and thereby deterrable conduct which provided a legally proper predicate felony for armed violence. 

The purpose of the armed violence statute is to "'discourage those who contemplate a felonious act beforehand from carrying a weapon when they set forth to perform the act.'"  
Drakeford
, 139 Ill. 2d at 211, quoting 
Alejos
, 97 Ill. 2d at 509.  Under the facts of this case we decline to find a legislative intent to exclude the section 33-3(b) official misconduct offense based on defendant's knowing violation of the law from being a predicate felony for an armed violence charge, since knowing conduct can be deterred and the purpose of the armed violence statute is thereby satisfied.  Defendant's conviction for armed violence was based on evidence of knowing and deterrable official misconduct.  The section 33-3(b) official misconduct allegation of defendant's unjustified altercation with Gould was a proper predicate felony for defendant's armed violence conviction.  Therefore, the State did not violate the principles of 
Alejos
, 
Fernetti
 and 
Drakeford
 since the armed violence statute was applied to deterrable conduct.

III. LEGALLY INCONSISTENT JURY VERDICTS

We address defendant's alternative argument that the jury returned legally inconsistent verdicts by finding defendant guilty of armed violence and involuntary manslaughter because the mental states of recklessness and knowledge are mutually inconsistent.  Defendant argues that if the jury found him guilty for armed violence based on his act of knowingly engaging in an unjustified altercation with the victim, the jury could not also consistently find that he acted recklessly for the same criminal conduct and return a verdict of guilty for involuntary manslaughter.  Defendant contends that his armed violence verdict of guilty based on a section 33-3(b) official misconduct predicate felony, alleging the knowing rule violation of engaging in an unjustified altercation is legally inconsistent with the guilty verdict for involuntary manslaughter, based on recklessly causing Gould's death. 

The State counters that the section 33-3(b) official misconduct offense is not a lesser included offense of involuntary manslaughter but an offense based on a knowing rule violation. 720 ILCS 5/33-

3(b) (West 1994).  The State contends that because armed violence and involuntary manslaughter require proof of different elements, the jury could find that while defendant was engaging in conduct he knew he was forbidden to perform, he was also recklessly causing Gould's death.

"Legally inconsistent verdicts cannot stand because they are unreliable.  At a minimum, such verdicts suggest confusion or misunderstanding on the part of the jury."  
People v. Klingenberg
, 172 Ill. 2d 270, 281 (1996).  When the jury returns multiple guilty verdicts on knowing and reckless offenses for the same conduct, the verdicts are legally inconsistent, and the defendant is entitled to a new trial. 
 
People v. Hoffer
, 106 Ill. 2d 186, 195 (1985).  In 
Hoffer
, the supreme court reversed a defendant's murder and manslaughter convictions and remanded for a new trial, because the jury's multiple verdicts indicated that defendant acted in a knowing, intentional, and reckless manner for the same criminal conduct.  
Hoffer
, 106 Ill. 2d at 195.  The court concluded that for a legally consistent verdict regarding the same criminal conduct, the jury was required to find that defendant acted either knowingly or recklessly, but that these mental states were mutually inconsistent and could not coexist.  
Hoffer
, 106 Ill. 2d at 195. 

In 
People v. Spears
, 112 Ill. 2d 396 (1986), the supreme court expanded on 
Hoffer
 and held that where defendant's culpable conduct was essentially one act, the jury could not find that defendant possessed simultaneous knowing and reckless mental states. 
 
Spears
, 112 Ill. 2d at 407.  In that case,
 the defendant shot his wife and her friend within rapid succession.  Five verdict forms were provided: one for attempted murder of his wife, two for armed violence as to his wife and her friend, and two for reckless conduct as to his wife and her friend.  The jury found the defendant guilty on all counts.  
The supreme court stated that, in resolving the question of whether guilty verdicts are consistent, the charging instrument, the jury instructions and the evidence at trial provide the essential framework for analyzing the consistency of jury verdicts.  
Spears
, 112 Ill. 2d at 405.  The court noted that if the verdicts are based on separate acts, then the jury could consistently find that defendant possessed separate culpable mental states for each act and could properly return verdicts of guilty on charges reflecting both knowing and reckless mental states.  
Spears
, 112 Ill. 2d at 406.  However, after reviewing the indictment and the evidence at trial, the court in 
Spears
 reversed and remanded for a new trial indicating that the defendant's charges overlapped, reflected one criminal act, and the evidence refuted any claim that defendant's mental state changed during the shooting of the two people; therefore, 
the jury could not have returned guilty verdicts based upon separate acts accompanied by different mental states of culpability.  
Spears
, 112 Ill. 2d at 406.  

The supreme court adhered to the holdings of 
Hoffer
 and 
Spears
 in 
People v. Fornear
, 176

Ill. 2d 523 (1997).  In 
Fornear
, the State again argued that defendant's conduct of firing multiple gunshots supported separate verdicts for the offenses of aggravated discharge of a firearm, which required proof of a knowing mental state, and reckless conduct, which required proof of a reckless mental state.  
Fornear
, 176 Ill. 2d at 532-33.  In that case, the defendant allegedly shot his fiancee multiple times.  
Fornear
, 176 Ill. 2d at 531-32.  Unlike 
Spears
, however, the court noted that the charges in the indictment and the issues instructions provided to the jury alleged a separate offense for each action or shot fired by the defendant.  
Fornear
, 176 Ill. 2d at 533.

Nevertheless, the court found that no evidence existed to support the State's theory on

appeal that defendant's mental state changed from a knowing mental state to a reckless mental state during the shooting.  
Fornear
, 176 Ill. 2d at 533.  The court noted that at trial the State's theory was that the defendant acted either intentionally or knowingly in shooting the victim.  Therefore, the State on appeal was attempting to justify guilty verdicts which conflicted with its theory at trial and the evidence.  
Fornear
, 176 Ill. 2d at 534
.  The court held that based on the evidence the jury could not rationally find that defendant's mental state had changed during the shooting or that he committed separate acts with different mental states.  
Fornear
, 176 Ill. 2d at 534.  Consequently, the court reversed the inconsistent guilty verdicts that found defendant acted with both knowing and reckless mental states and remanded for a new trial on the aggravated discharge of a firearm and reckless conduct charges. 
 
Fornear
, 176 Ill. 2d at 535.

In this case, like 
Hoffer,
 
Spears
, and 
Fornear
, the involuntary manslaughter count and the section 33-3(b) official misconduct count upon which the armed violence was based charged defendant with essentially one criminal act or course of conduct.  Count II alleged that defendant committed involuntary manslaughter in that "he without lawful justification, acting in a reckless manner, unintentionally killed Joseph Gould * * * when he discharged a handgun in the presence of Joseph Gould, causing a fatal gun shot wound to the head of Joseph Gould."  Under counts IX, XII and XIII, the section 33-3(b) official misconduct charges alleged that defendant knowingly violated Chicago police department regulations in that he unnecessarily displayed his weapon and struck "Gould with said weapon" (count IX) and knowingly engaged in an unjustified physical altercation with Gould (counts XII and XIII).  Therefore, the indictment charged defendant with both reckless and knowing mental states for the conduct of discharging a handgun in the presence of Gould and causing a fatal gunshot wound to Gould's head, displaying his weapon and striking Gould with the weapon, and engaging in an unjustified physical altercation with Gould.

In addition, the issues instructions given to the jury support a finding that the jury convicted defendant for knowing and reckless offenses for the same criminal conduct.  The involuntary manslaughter instruction required the jury to find that "defendant performed the acts which caused the death of Joseph Gould" and that the "defendant performed those acts recklessly."  The armed violence instruction and the section 33-3(b) official misconduct instruction that provided the predicate felony for the armed violence instruction required the jury to find that "defendant knowingly performed an act which he knew was forbidden by law, to wit: he engaged in an unjustified verbal or physical altercation with Joseph Gould in that he shot Joseph Gould in the head."  The other section 33-3(b) official misconduct instruction required the jury to find that defendant knowingly performed an act which he knew was forbidden by law when "he unlawfully or unnecessarily used or displayed his weapon."  The instructions and verdict forms provided to the jury rely on essentially the same conduct for the involuntary manslaughter, armed violence, and section 33-3(b) official misconduct offenses.  The State's theory as articulated in rebuttal argument was that defendant committed one criminal act that caused the death of Gould, specifically, the act of pistol whipping Gould.  The State repeatedly indicated in rebuttal argument that defendant was guilty because he "pistol whipped" the victim.  Therefore, the record does not support a finding that defendant committed separate knowing and reckless acts, or that the defendant's mental state changed during his altercation with the victim. 

In 
Hoffer
 the court resolved the problem that occurs when the jury returns guilty verdicts for offenses arising out of the same criminal conduct but containing inconsistent mental states.  The
 jury in 
Hoffer
 received conflicting evidence as to whether the defendant intentionally or knowingly shot the victim, which was the State's theory, or whether the defendant accidentally shot the victim under the defendant's theory.  The jury returned verdicts finding defendant guilty for knowingly and intentionally shooting the victim (murder) and recklessly shooting the victim (voluntary and involuntary manslaughter).  The trial court vacated the manslaughter convictions but allowed the murder conviction to stand.  The supreme court, however, reversed the murder conviction because of the inconsistent mental states and ordered a new trial on all the inconsistent verdicts.  
Hoffer
, 106 Ill. 2d at 195.

In this case, the jury received conflicting testimony regarding the shooting of Gould and defendant's mental state at the time he armed himself, engaged in the verbal and physical altercation with the victim, and shot the victim. 
 The State argued that defendant knowingly armed himself with his weapon, knowingly displayed his weapon, and knowingly engaged in an unjustified verbal and physical altercation during which the victim was shot; the defense argued that Gould was the aggressor and Gould was shot accidentally.  The jury received instructions on armed violence based on the knowing offense of official misconduct and instructions on the reckless offense of involuntary manslaughter.  The jury also received instructions on the knowing offenses of section 33-3(b) official misconduct.  As in 
Hoffer
, 
Spears
, and 
Fornear
, the jury was instructed on knowing and reckless offenses arising from essentially the same conduct and returned guilty verdicts for each offense it was instructed on, thereby convicting defendant of offenses that contained mutually inconsistent mental states.  
Hoffer
, 106 Ill. 2d at 195.
  
We conclude that based on the evidence, the jury could have found that defendant acted either knowingly or recklessly, but it could not render inconsistent multiple guilty verdicts with both mental states for essentially the same conduct.  
 

The trial court's failure to send the jury back for further deliberations to resolve the inconsistent verdicts mandates a reversal and a new trial on all the inconsistent verdicts including
 involuntary manslaughter, armed violence, which was based on the section 33-3(b) knowing official misconduct charge alleging an unjustified altercation, and the section 33-3(b) knowing official misconduct charges.  We further indicate that, on retrial, the trial court should take the preventative step of instructing the jury before it deliberates that it cannot consistently return simultaneous guilty verdicts for both reckless and knowing offenses.  
Spears
, 112 Ill. 2d at 410.  If after deliberation the jury again returns guilty verdicts for a reckless offense and a knowing offense, the trial court must send the jury back for further deliberation with additional instructions to resolve the inconsistency.  
Fornear
, 176 Ill. 2d at 534-35.  "When the jury return[s] with inconsistent guilty verdicts, the trial judge ha[s] a duty to send the jury back for further deliberations consistent with new instructions to resolve the inconsistency."  
Spears
, 112 Ill. 2d at 410. 

We conclude that defendant is not entitled to a reversal of the section 33-3(a) official misconduct conviction because that offense allowed the jury to find defendant guilty if it found that defendant acted either intentionally or recklessly.  Since the jury returned guilty verdicts for both reckless and knowing offenses, there was no inconsistency in the verdict of guilty on the 33-3(a) official misconduct charge.  720 ILCS 5/33-3(a) (West 1994).  We note subsection (a) of section 33-3 official misconduct indicates that a public official commits misconduct when he "intentionally or recklessly fails to perform any mandatory duty as required by law."  720 ILCS 5/33-3(a) (West 1994).  In this case the indictment and jury instructions for the section 33-3(a) official misconduct offense tracked the language of the statute.  Moreover, there was sufficient evidence to prove defendant guilty beyond a reasonable doubt under this section of the statute.  Any possible inconsistency created in subsection (a) of the statute by reference to either an intentional or reckless mental state has not been argued in the context of the issues raised by the defendant in the trial court or on appeal.

IV. DOUBLE ENHANCEMENT

Defendant next contends that his armed violence conviction constitutes a double enhancement.  In cases involving questions of law, the standard of review is 
de novo
.  
People v. Walker
, 308 Ill. App. 3d 435 (1999).  Defendant argues that proof of a weapon was an essential element of his section 33-3(b) official misconduct charge, that served as the predicate felony for the armed violence charge, and the legislature did not intend armed violence to apply to a felony that required proof of a weapon as an element.  
People v. Haron
, 85 Ill. 2d 261, 278 (1981).  The State claims that because the section 33-3(b) official misconduct charge that served as the predicate felony for armed violence did not allege defendant's use of a weapon but alleged a rule violation, there is no double enhancement.

Double enhancement exists "when a factor previously used to enhance an offense or penalty is again used to subject a defendant to a further enhanced offense or penalty."  
People v. Koppa
, 184 Ill. 2d 159, 174 (1998).  In the context of armed violence, the State cannot seek to enhance an offense through the presence of a weapon and then use the weapon as a basis for an armed violence charge.  
Haron
, 85 Ill. 2d at 278.  In 
Haron
, the supreme court found an impermissible double enhancement because the presence of a weapon enhanced a misdemeanor battery offense to felony aggravated battery and additionally served as a basis for an armed violence charge.  
Haron
, 85 Ill. 2d at 278. 

However, where a defendant possesses a weapon during the commission of a felony, an armed violence charge does not constitute improper enhancement if the elements of the predicate felony require no presence or use of a weapon.  
People v. Munson
, 171 Ill. App. 3d 274, 276 (1988).  In 
Munson
, defendant pointed a weapon at two police officers and threatened to kill them.  Defendant was convicted of armed violence with intimidation as the predicate felony.  The court noted the elements of intimidation only required that defendant cause "a threat to unlawfully inflict harm, communicated with intent to cause action or inaction."  
Munson
, 171 Ill. App. 3d at 277.  The elements of this charge required no use or presence of a weapon. 
 
Munson
, 171 Ill. App. 3d at 277.
  Therefore, the court held that because defendant's possession of a weapon was not an essential element nor did it enhance the predicate felony of intimidation, defendant was not subject to a double enhancement.  
Munson
, 171 Ill. App. 3d at 277.  T
he supreme court further explained this principle in 
Koppa
, noting that "the armed violence statute's requirement that there be the commission of a felony while armed with a dangerous weapon contemplates the commission of a predicate offense which is a felony without enhancement by the presence of a weapon."  
Koppa
, 184 Ill. 2d at 174.  Therefore, the court concluded that felonies that themselves include the use or presence of a weapon as an essential element cannot be the basis of an armed violence charge.  
Koppa
, 184 Ill. 2d at 175.

The defendant points out that the issues instructions provided to the jury for the armed violence charge stated that defendant committed official misconduct when he knowingly "engaged in an unjustified verbal or physical altercation with Joseph Gould in that he shot Joseph Gould in the head."  Defendant argues that the words, "in that he shot Joseph Gould in the head" indicated that a weapon was an essential element of the section 33-3(b) official misconduct charge that provided the predicate felony for armed violence.  The State counters that this phrase constitutes "additional verbiage" and does not add a weapon as an essential element of the official misconduct charge.

We are mindful that the fact that an indictment for armed violence contains the proper predicate felony is irrelevant if the jury instructions allow for conviction on legally impermissible grounds.  
People v. Hines
, 257 Ill. App. 3d 238, 245 (1993).  We further note that defendant, in a bill of particulars, requested the State to "specify what particular act of defendant Becker constitutes the physical altercation referred to" in the two official misconduct charges in counts XII and XIII.  The State specified the particular act of defendant which constituted the physical altercation was: "Physical contact with Joseph Gould occurring on July 30, 1995, which contact resulted in Joseph Gould sustaining a fatal gunshot wound to the head."  The wording in the jury instruction on armed violence referenced the gunshot to the head as did the State's response to defendant's request for a bill of particulars.

However, defendant's armed violence charge does not constitute a double enhancement if the section 33-3(b) official misconduct charge that provides the predicate felony for the armed violence does not require a weapon as an element of the offense or is not enhanced by the presence of a weapon.  
Munson
, 171 Ill. App. 3d at 277.  Here, the armed violence predicate was an official misconduct charge alleging that defendant had engaged in an unjustified verbal or physical altercation with Gould.  The predicate felony of official misconduct did not require proof of the use or presence of a weapon as an element of the offense; rather, the State was required to prove that defendant knowingly engaged in an unjustified altercation with Gould.  720 ILCS 5/33-3(b)(West 1994).
  The elements of the official misconduct that provided the predicate offense for the charge of armed violence are: (1) that the defendant was a public officer or employee; (2) that in his official capacity the defendant knowingly performed an act he knew was forbidden by law to perform, to wit: violated the rules and regulations of the Chicago police department; (3) that defendant engaged in an altercation with Joseph Gould; and (4) that the altercation was unjustified. 

Therefore, this official misconduct charge could properly serve as a predicate felony for armed violence because the possession, use, or presence of a weapon was not an essential element of the predicate felony nor did the weapon enhance the predicate felony of official misconduct.  
Munson
, 171 Ill. App. 3d at 277.  Defendant was not subjected to double enhancement because the State did not need to prove that defendant used or possessed a weapon to sustain its burden of proving the elements of the official misconduct charge which served as the predicate felony for the armed violence.  The issues instruction provided for the jury contained the essential elements of the offense and did not allow for conviction on legally impermissible grounds.  The additional verbiage in the instruction indicating defendant shot Gould in the head was not an element of the official misconduct, was not necessary to establish the official misconduct, and merely provided additional description.  Therefore, defendant was not subject to double enhancement by the armed violence conviction because defendant's possession of a weapon was not an essential element of the official misconduct predicate felony, nor did it enhance the predicate felony of official misconduct.

V. THE SUFFICIENCY OF ARMED VIOLENCE AS CHARGED

Defendant next contends that the trial court erred in denying his motion to dismiss the armed violence charge where the indictment failed to specify the law and the conduct that formed the basis for the official misconduct predicate felony for the armed violence charge.  Defendant argues that because the armed violence charge only alleged that defendant committed official misconduct while armed with a dangerous weapon but described no rule violation or conduct underlying the charge, he was not sufficiently informed of the nature and elements of the armed violence charge and could not prepare an adequate defense.

The standard of review of a defendant's motion to dismiss an indictment is whether the "indictment[] strictly compl[ies] with the pleading requirements of section 111-3 of the Code of Criminal Procedure of 1963."  
People v. Oaks
, 169 Ill. 2d 409, 442 (1996).  Section 111-3(a)(3) of the Code of Criminal Procedure of 1963 requires that an indictment adequately inform an accused of a charged offense by "[s]etting forth the nature and elements of the offense charged."  725 ILCS 5/111-3(a)(3) (West 1994).  The question is not whether the alleged offense could have been described with greater certainty, but whether there is sufficient particularity to enable the accused to prepare a proper defense.  
People v. Meyers
, 158 Ill. 2d 46, 54 (1994).  The official misconduct statute, standing alone, does not particularize the offense.  
People v. Samel
, 115 Ill. App. 3d 905, 909 (1983).  Where a statute does not specifically define the crime, or does so only in general terms, the charge must go beyond the words of the statute; it must allege some act showing the statute was violated.  
People v. Grieco
, 44 Ill. 2d 407, 409-10 (1970). 

"[I]t is a well-established rule in Illinois that all counts of a multiple-count indictment should be read as a whole and that elements missing from one count of an indictment may be supplied by another count."  
People v. Morris
, 135 Ill. 2d 540, 544 (1990).  As a result, although an indictment must identify the elements of a predicate felony in an armed violence charge, those elements can be supplied by other counts of a multiple-count indictment.  
People v. Hall
, 96 Ill. 2d 315, 321 (1982).  In 
Hall
, 
one count of a three-count indictment charged defendant with violating the Cannabis Control Act (Ill. Rev. Stat. 1977, ch. 56½, par. 705) and a separate count charged defendant with armed violence based on a violation of the Cannabis Control Act, but did not allege specific conduct.  
Hall
, 96 Ill. 2d at 318-19.  The appellate court in reversing held that the failure to state the elements of the underlying felony impermissibly deprived defendant of notice as to what the State would allege defendant was doing while armed with a gun.  
Hall
, 96 Ill. 2d at 319.  The supreme court, however, rejected defendant's argument that the armed violence count did not sufficiently allege the elements of the predicate felony.  The court indicated that if one count sets forth specific elements of an offense mentioned only generally in a separate count, a presumption arises that the specific count additionally describes the elements of the general count.  
Hall
, 96 Ill. 2d at 323.  The court further emphasized that the "focus remains on defendant's ability to prepare an effective defense that, if successful, would bar further prosecutions for the same offense."  
Hall
, 96 Ill. 2d at 323.  In finding that the allegations in the armed violence count adequately informed the defendant, the court relied on the almost sequential events that provided the basis for the separate, but related, crimes of possession and delivery of a controlled substance.  
Hall
, 96 Ill. 2d at 322.  

Defendant claims that 
Hall
 does not apply because the defendant in 
Hall
 first challenged the sufficiency of the indictment's allegations in a posttrial rather than a pretrial motion.  The supreme court, however, in 
Morris
 rejected this argument and reaffirmed application of the general principles recognized in 
Hall
 where a defendant, as in this case, has made a pretrial challenge to the sufficiency of the indictment.  
Morris
, 135 Ill. 2d at 544.  Here, count I charged defendant with armed violence in that he, when armed with a handgun, committed the felony of official misconduct under section 33-3(b) of the Code.  The indictment then charged defendant with separate counts of official misconduct under section 33-3(b).  The facts alleged in these additional counts provided sufficient information to place defendant on notice of the nature and specific elements of the official misconduct predicate felony for the armed violence charge.  The elements of count I were supplied in the section 33-3(b) official misconduct charges alleged in the multiple-count indictment.  Moreover, the conduct alleged in the section 3-33(b) counts charged defendant with essentially a single course of conduct.  Defendant was alleged to have committed each rule violation and thereby engaged in unlawful conduct at the same place, against the same victim, and within a matter of minutes.   

Defendant suggests that he was required to defend against uncharged conduct, but his argument is not persuasive.  Official misconduct counts XII and XIII properly served as a predicate felony for the armed violence charge by alleging that defendant engaged in an unjustified altercation with Gould.  720 ILCS 5/33-3(b) (West 1994).  We further note that these two section 33-3(b) official misconduct counts informed the defendant of the nature of the official misconduct and relied on the same specific police department rule that defendant allegedly violated as contained in Article V, namely, Rule 9.  Moreover, those same two counts were the subject of defendant's bill of particulars regarding the physical altercation that provided the basis for the section 33-3(b) official misconduct predicate for the armed violence charge.  Defendant also had available the preliminary hearing transcript.  While the State's response to the bill of particulars and the preliminary hearing transcript cannot substitute for a valid indictment, they can supplement, as here, a sufficient indictment with more specificity to enable a defendant to better understand the nature of the charges against him, or to better prepare a defense.  
Meyers
, 158 Ill. 2d at 53.  Therefore, the multiple-count indictment sufficiently notified defendant of the nature of the armed violence charge.  
Hall
, 96 Ill. 2d at 323.  Defendant was afforded an adequate opportunity to "prepare a defense which, if successful, would bar further prosecution for the same offense."  
People v. Smith
, 99 Ill. 2d 467, 471 (1984).  We find the indictment does comply with Section 111-3(a)(3) of the Code of Criminal Procedure and affirm the ruling of the trial judge in denying defendant's motion to dismiss the armed violence charge.

VI. FIFTH AMENDMENT VIOLATION

Defendant contends that the judge erred in denying his motion to dismiss the section 33-3(a) official misconduct charge based on his failure to comply with General Order 85-1 of the Chicago police department.  General Order 85-1 of the Chicago police department required that defendant provide the police department with information regarding the circumstances of the discharge of his weapon.  Defendant claims that General Order 85-1 violates defendant's protection from compulsory self incrimination under the fifth amendment of the U.S. Constitution which provides that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const., amend. V.  

Defendant was charged with section 33-3(a) official misconduct in that he intentionally or recklessly failed to perform a mandatory duty as required by law by violating the rules and regulations of the Chicago police department in not following required procedures after discharging his firearm.  720 ILCS 5/33-3(a) (West 1994).  The purpose of the official misconduct statute is to compel public officials and employees, while acting in their official capacity, to do so in a lawful manner.  
Samel
, 115 Ill. App. 3d at 905.  
An official misconduct charge can be based on a violation of an administrative rule or regulation, although that rule or regulation does not itself carry any penalty.  
People v. Davis
, 281 Ill. App. 3d 984 (1996).  In 
this case, the administrative rule in question is General Order 85-1, whose purpose is to enable the Chicago police department to regulate its officers upon whom it has conferred the right to use weapons.  
A properly promulgated administrative rule or regulation is an expression of legislative policy because an agency in the proper exercise of its rulemaking power gives expression to legislative policy.  
Samel
, 115 Ill. App. 3d at 910.  Administrative rules and regulations have the force and effect of law and, like a statute, enjoy a presumption of validity.  
Samel
, 115 Ill. App. 3d at 910.  

A court inquires into the constitutionality of a statute only to the extent necessary to the particular case before it.  
People v. Rogers
, 133 Ill. 2d 1, 8 (1989).  Where no facts demonstrate an unconstitutional application of the statute or law to defendant, defendant cannot challenge the statute on grounds that it might conceivably be applied unconstitutionally in some hypothetical case.  
People v. Wisslead
, 108 Ill. 2d 389 (1985).  A reviewing court will not consider objections to an allegedly unconstitutional feature if the complaining party is not in any way aggrieved by the complained-of feature.  
People v. Bombacino
, 51 Ill. 2d 17 at 19-20 (1972).  

Here, defendant has failed to demonstrate sufficient facts to establish that General Order 85-1 violated his protection from compulsory self-incrimination.  The standard for application of the fifth amendment privilege has been whether the person claiming it is confronted by substantial and real, not merely trifling or imaginary, hazards of incrimination.  
Marchetti v. United States
, 390 U.S. 39, 53, 19 L. Ed. 2d 889, 901, 88 S. Ct. 697, 705 (1968).  Application of the fifth amendment privilege to defendant is established  by showing that defendant's compliance with General Order 85-1 would have resulted in evidence being used against defendant in a criminal proceeding.  However, in this case, the defendant's statements were not used against him.  Moreover, we would have to speculate as to whether defendant's compliance with General Order 85-1 would have generated statements by defendant that would have been used against him in a criminal proceeding.  Such speculation cannot support a claim of standing or establish violation of the privilege against compulsory self-incrimination.  Defendant asks this court to find the official misconduct statute unconstitutional as applied to the rules and regulations of the Chicago police department even though no direct constitutional right relating to the defendant has been violated.  In the absence of facts demonstrating an unconstitutional application of the statute in this case, the defendant may not challenge the statute on the ground that it might have been applied to deprive him of his constitutional rights in some hypothetical sense.  
Broadrick v. Oklahoma
, 413 U.S. 601, 610, 37 L. Ed. 2d 830, 839, 93 S. Ct. 2908, 2915 (1973); 
People v. Caffrey
, 97 Ill. 2d 526, 529 (1983).   

In this case, the connection between the information required by General Order 85-1 and any actual incrimination of the defendant is too speculative to form a basis for a claim of privilege or to establish a violation of defendant's fifth amendment privilege.  In prosecuting the defendant the State did not use against defendant any information provided by the defendant as the result of General Order 85-1.  Defendant has not shown that, if he had complied with General Order 85-1, the information he would have provided would have been used against him in the prosecution of his criminal case.  The privilege against compulsory self-incrimination does not apply unless the complainant faces a real and substantial risk of incrimination, rather than a remote risk.  
California v. Byers
, 402 U.S. 424, 428, 29 L. Ed. 2d 9, 17, 91 S. Ct. 1535, 1538 (1971); 
Larkin v. Hartigan
, 250 Ill. App. 3d 969, 975 (1993).  The constitutional violation may occur if the information the citizen is required to give is used as evidence against him in a criminal proceeding.  
People v. Lucus
, 41 Ill. 2d 370, 374 (1968).  

In 
Lucus
 our supreme court decided whether a statute requiring a driver involved in a vehicular accident to provide his name, address and vehicle registration to persons in the other vehicle violated the fifth amendment.  The court held that the statute did not violate the fifth amendment because the possibility of self-incrimination was remote since it did not require the driver to discuss the event beyond providing basic information. 
 
Lucus
, 41 Ill. 2d at 374.  Likewise, in  
People v. Walker
, 18 Ill. App. 3d 351 (1974), the court, following the holding in 
Lucus
, held that an Illinois statute making it a crime to leave the scene of an accident and not report it did not violate the defendant's constitutional right against self-incrimination.  It further stated that such a statute was a proper exercise of the legislature’s police power.  
Walker
, 18 Ill. App. 3d at 356.  

Here, defendant contends that section 33-3(a) is unconstitutional as applied to him because the type of information required by General Order 85-1 subjects defendant to the real hazards of incrimination.
  We note that the Chicago police department has an obvious interest in calling upon its officers to account for their performance in connection with their official duties.  Both the State and defense agree that General Order 85-1 is applicable by its own terms to all situations where a police officer discharges a weapon, whether legally or illegally.  Thus, the statute is not directed at a group inherently suspected of criminal activities.  As such, the primary purpose of the order is not to prepare or gather evidence for criminal prosecution but, rather, to enable the police department to regulate its officers, upon whom it has conferred the right to use deadly force.  The requirement to report the circumstances surrounding a weapon discharge imposed by the police department upon its officers is one way the department regulates and monitors use of possible deadly force by its officers.  Cases involving statutes that imposed a duty to report that were found to offend the fifth amendment targeted individuals suspected or guilty of criminal activity.  
Byers
, 402 U.S. at 429-30, 29 L. Ed. 2d at 18, 91 S. Ct. at 1538-

39
.  Here, the general order is designed to apply to all situations where an officer discharges his weapon, not only suspicious or illegal situations.  Unlike the statutes found to violate the fifth amendment in 
Byers
, General Order 85-1 is not directed at a group inherently suspected of criminal activities.  
Byers
, 402 U.S. at 429-30, 29 L. Ed. 2d at 18, 91 S. Ct. at 1538-39.
  

We note that this case does not raise the question of whether information provided to investigators by the defendant in compliance with General Order 85-1 can be used to criminally prosecute the defendant in possible violation of the defendant’s fifth amendment privilege against compulsory self-incrimination since he provided no such information.  Defendant’s convictions in this case are the result of evidence developed independently of any information given by defendant to the police investigating the shooting.
  As defendant himself points out, he did not comply with the general order and, therefore, did not make any statements, including any incriminating statements.  As such, defendant’s fifth amendment privilege against compulsory self-incrimination was not violated.  It has not been demonstrated that defendant's compliance with General Order 85-1 was for the purpose of securing information to prosecute him and not for the legitimate purpose of securing an accounting of his performance of his public trust.  Based on the foregoing analysis we conclude the trial court properly denied defendant's motion to dismiss the section 33-3(a) official misconduct charge alleging defendant's failure to comply with General Order 85-1 of the Chicago police department. 

VII. SUFFICIENCY OF EVIDENCE

Defendant lastly claims that the State failed to prove him guilty beyond a reasonable doubt of official misconduct and armed violence where the evidence demonstrated the acts of the defendant were committed in his individual, not official, capacity.  If the evidence at trial was insufficient to support defendant's official misconduct and armed violence convictions, then double jeopardy bars the retrial of these counts.  
Fornear
, 176 Ill. 2d at 535.  When the sufficiency of the evidence is challenged on appeal, the relevant inquiry is whether, when viewed in the light most favorable to the State, any rational trier of fact could have found that all of the elements of the crime were proven beyond a reasonable doubt.  
People v. Jimerson
, 127 Ill. 2d 12, 43 (1989). 

A police officer need not be on duty and in uniform to commit an act of official misconduct.  
People v. Webb
, 144 Ill. App. 3d 83, 86 (1986). 
 A police officer commits an act of official misconduct when the officer exploits his official position and acts in detriment to the public good.  
People v. Steinmann
, 57 Ill. App. 3d 887, 897 (1978).  Defendant relies on 
Steinmann
 and 
Webb
 to support his contention that he was not acting in his official capacity when he had the altercation with the victim.  We find the facts of those cases distinguishable.  In 
Steinmann
, the court reversed an official misconduct charge against an off-duty police officer.  The  allegation against the officer was that he sold a weapon to another officer during a Christmas party.  
Steinmann
, 57 Ill. App. 3d at 898.  The officer claimed an arrestee had given him the gun.  The court found that the officer did not exploit his official position by simply selling a gun to another officer.  
Steinmann
, 57 Ill. App. 3d at 898.

Similarly, in 
Webb
, the defendant, a law enforcement agent, was convicted of official misconduct for committing perjury at the criminal trial of an acquaintance.  The defendant falsely testified that, while off duty, he observed the acquaintance on the date of the alleged crime.  
Webb
, 144 Ill. App. 3d at 84-85.  Reversing the official misconduct conviction, the court reasoned that the defendant was not called to testify in his capacity as a law enforcement officer and he testified to events that happened while he was off duty.  
Webb
, 144 Ill. App. 3d at 86-87.  Moreover, no evidence existed that the defendant received any benefit from his false testimony.  
Webb
, 144 Ill. App. 3d at 87.

In this case, unlike 
Steinmann
 and 
Webb,
 defendant interjected his public office and authority as a police officer to the detriment of the victim and the public.  Defendant's actions cannot be severed from his sworn duties as a Chicago police officer.  Defendant retrieved a weapon that he was permitted to carry as a police officer and displayed that weapon during the altercation.  During the physical altercation the victim was shot by the defendant's gun.  Lieutenant Hickey testified that Chicago police officers must act with public integrity at all times and render protection and service to citizens.  Lieutenant Hickey further stated that police department rules prohibited defendant while on duty or off duty from engaging in an unjustifiable altercation with a citizen or using his weapon in an unlawful manner.  These duties apply whether an officer is on or off duty.  Defendant used a weapon that he was allowed to carry because he was a police officer.  Moreover, by displaying that weapon and engaging in an altercation with the victim, defendant committed an act contrary to his training and contrary to the oath he took as a police officer.  Defendant admitted on cross-examination telling Gould he was a police officer and that he would lock Gould up.  Based on the totality of the circumstances, we find sufficient evidence to prove defendant guilty beyond a reasonable doubt of official misconduct and armed violence.

After thoroughly reviewing the evidence, we find it to have been sufficient to support each of the guilty verdicts.  If upon retrial and after deliberation the jury returns guilty verdicts for a reckless offense and a knowing offense, the trial court must send the jury back for further deliberations with additional instructions to resolve the inconsistent verdicts.  We find no double jeopardy impediment to a new trial.  
People v. Porter
, 168 Ill. 2d 201, 215 (1995).  We note that we have made no findings as to defendant's guilt that would be binding on retrial.  
People v. Jones
, 175 Ill. 2d 126, 134 (1997).   

For the reasons previously stated, we reverse defendant's armed violence, involuntary manslaughter and official misconduct section 33-3(b) convictions, vacate the sentences on those convictions and remand for a new trial consistent with this opinion.  

We affirm defendant's section 33-3(a) official misconduct conviction and sentence.  

Affirmed in part and reversed in part; cause remanded. 

O'BRIEN and GALLAGHER, JJ., concur.