(No. 41041.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ROBERT WILLIAM BIXLER, Appellant.

*Opinion filed September 30, 1971.—Rehearing denied Nov. 24, 1971.*

RYAN, J., took no part.

JASEN E. BELLOWS, of Chicago, (BELLOWS, BELLOWS, and MAGIDSON, of counsel,) for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and ROBERT E. RICHARDSON, State's Attorney, of Ottawa, (THOMAS J. IMMEL and FRED G. LEACH, Assistant Attorneys General, and THOMAS R. FLOOD, Assistant State's Attorney, of counsel,) for the People.

MR. JUSTICE DAVIS delivered the opinion of the court:

The defendant was indicted by the La Salle County grand jury on February 20, 1967, for the offenses of robbery and theft committed on September 30, 1966. A trial by jury, which began on June 14, 1967, resulted in his conviction on both charges, and he was sentenced to the penitentiary for a term of not less than 3 nor more than 10 years on the robbery charge.

On September 30, 1966, Shirley Carman, an employee of the Northern Illinois Corporation in Ottawa (a loan company), was alone in the office about 1:00 P.M., when a man walked in and ordered her to "put all the money on the counter." He carried a red plaid bag with a long drawstring plastic band around the top, and was dressed in a blue denim jacket and tan pants. Currency in the amount of $554 was taken. Mrs. Carman identified the defendant as the man who took the money.

H. L. Hetrick, circulation manager of a newspaper in Ottawa, was in the Elks Club directly across the street

from Northern Illinois Corporation prior to the time of the robbery and observed a man outside the loan company office. Hetrick described the man, whom he first noticed standing in the alley, as dressed in a blue denim jacket, tan pants, black shoes, and stated that he had sunglasses which he put on and took off, and that he carried a red plaid bag. When Hetrick left the Elks Club to return to his office, he passed within a foot of the man. Hetrick continued to watch the man through the window of his office, and saw him walk up and down the street in front of the loan company, then put on a pair of black gloves and rapidly enter the loan company. When the man later ran out of the loan company's office he was pursued by Hetrick, but without success. Hetrick identified the defendant as the man he had observed for approximately 40 minutes.

Lorraine Burns testified that she saw the man come out of the office as she was returning to work after lunch, and her description of him coincided with that of the other two eyewitnesses. She also identified the man she saw as the defendant.

The defendant was taken to the Ottawa police station by officers of the city police department on the evening of October 20, and there was identified as the person who committed the robbery of the Ottawa Federal Savings and Loan Association. He was also then identified by the witnesses Hetrick and Carman as the person who robbed the Northern Illinois Corporation. He was permitted to go home and was told to, and did, return to the police station the following morning, October 21, 1966, at which time the F.B.I. took him into custody for the robbery of the Ottawa Federal Savings and Loan Association located in Ottawa, a Federal offense. At this time he was questioned about the robbery of the Northern Illinois Corporation, but was not charged with that offense. He remained in Federal custody in Chicago until he was found not guilty in the Federal court on January 25, 1967, and he was then released. He was indicted on the charge in question on

February 20, 1967, and was then taken into custody for this offense.

The defendant contends here that pretrial newspaper publicity entitled him to a change of place of trial; that the manner of his identification denied him due process of law; that proof of his possession of money after the robbery should not have been admitted in evidence; and that he was entitled to discharge in that he was not brought to trial within 120 days after he was taken into custody.

As to the issue of pretrial publicity, the defendant was the subject of several newspaper articles in the local papers, the first of which appeared on or about October 22, 1966—subsequent to his arrest. This article carried an interview with the teller of the savings and loan association who had identified him. Subsequent brief newspaper articles mentioned his appearance before the United States Commissioner in Chicago, his indictment in the United States District Court, his plea of not guilty there, and his eventual acquittal. The last of the pretrial news accounts appeared on March 2, 1967, more than three months prior to his trial on the charges in question. It recounted his arrest on the indictment for the robbery of Northern Illinois Corporation and that he had been found not guilty of the Federal charge.

When the trial began on June 14, 1967, the defendant's motion to suppress evidence (certain items of clothing taken from the home of his brother-in-law) was granted, and the newspaper reported a true and exact account of the trial court's order. Accurate and factual reports of the trial were published as it was in progress. A fairly lengthy examination of prospective jurors in regard to pretrial publicity was conducted by the court and by counsel. The jurors who indicated familiarity with the articles were examined individually, outside of the presence of the other jurors, as to their memory of the accounts and as to any possible influence caused thereby.

After publication of an article concerning the suppression of evidence, counsel for the defendant requested permission to examine the jurors as to any influence the article might have had on them. The court admitted the newspaper article in evidence, found nothing about it which could substantially prejudice the rights of the defendant and denied defense counsel's request. We too have read the article and agree with the finding and ruling of the trial court.

The defendant's contention that he was prejudiced by pretrial publicity is not well taken. He relies on *Sheppard v. Maxwell, 384 U.S. 333, 348-356, 16 L.Ed.2d 600, 612-617, 86 S.Ct. 1507,* wherein Sheppard was subjected to extensive adverse newspaper, radio and television publicity; newsmen were seated inside the bar during the trial; witnesses and counsel were interviewed repeatedly at length and their statements were represented as evidence by the press; lengthy comments were made on the testimony; accusations against the defendant which were not made at the trial were printed; the jurors were permitted to make phone calls and they received calls and letters pertaining to the case during their deliberations; and numerous other disruptive irregularities occurred, both before and during the trial. The facts in *Sheppard* were very different from those in the case at bar, and *Sheppard* is clearly distinguishable from it.

In *People v. Hryciuk, 5 Ill.2d 176* (a rape case), and *People v. Murawski, 394 Ill. 236* (an abortion case), the newspaper articles dwelt upon the sordid facts of the respective offenses which by their very nature provoked intense indignation and created a situation readily susceptible to bias and prejudice against the respective defendants. In *Hryciuk,* the news story, which was read by the jurors the evening before they rendered their verdict, stated that Hryciuk had confessed to two murders and boasted that he had attacked more than fifty women, and that he had been arrested while trying to attack a young

woman. In *Murawski,* the newspaper article recited a prior indictment for murder by abortion against the accused and a second indictment for an attempted abortion where the victim had died. In addition, the State's Attorney argued that the accused was "trafficking in this illicit business of killing babies before they were born," (394 Ill. at 242) and the only facts to support this statement were found in the newspaper articles. These two cases, with reference to their attendant newspaper publicity, are in no respect similar to the case at bar.

Where the publicity precedes the trial by several months and where the jurors selected indicate that they have no preconceived notions about the defendant's guilt or innocence, and have not been influenced by anything they may have read or heard, there is no requirement that the place of trial be changed. *People v. Speck, 41 Ill.2d 177, 185-186.*

The defendant next contends that the confrontation resulting in his identification was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law, and cites *Stovall v. Denno, 388 U.S. 293, 302, 18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967,* in support of his contention. Two of the identification witnesses viewed the defendant at the police station through a glass. There was no lineup. The third witness identified a photograph of him. These identification procedures took place October 20, 1966, and the rule, requiring the exclusion of identification evidence which is tainted by exhibiting the accused to identifying witnesses before trial in absence of counsel, affects only those cases involving such confrontations after June 12, 1967. *Stovall v. Denno, 388 U.S. 293, 296-302, 18 L.Ed.2d 1199, 1203-1206, 87 S.Ct. 1967.*

The improper use of photographs may lead to error in identification, but their use in the investigation of criminal activity is a necessary and accepted practice. A conviction will be set aside only if the photographic identification

procedure was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. *(Simmons v. United States, 390 U.S. 377, 384-386, 19 L.Ed.2d 1247, 1253-1254, 88 S.Ct. 967.)* The test of *Simmons* is clearly met in the instant case. Also it is apparent from the opportunity of observation on the part of the identification witnesses, and particularly Hetrick, that their in-court identification of the defendant had an origin completely independent of the pretrial identification at the police station. *People v. Harris, 46 Ill.2d 395, 398.*

The trial court admitted evidence that the defendant had been unemployed for three months prior to the robbery, was behind in his rent, and had borrowed money, but that immediately after the robbery, he made a loan payment of $152, paid the rent, and purchased merchandise for $39.95. The defendant contends that the court erred in admitting such evidence. We recognize the rule of evidence that where a defendant is on trial for a crime in which pecuniary gain is the usual motive, evidence of the sudden acquisition of money by the defendant is admissible, even though the source of the money is not traced. *United States v. Jackskion (2d cir.), 102 F.2d 683, 684; People v. Link, 365 Ill. 266, 286, 287; Wigmore on Evidence, 3d ed., vol. 1, sec. 154, p. 601.*

The defendant's final contention is that he was in the custody of the LaSalle County authorities on the instant charge on the date of his initial detention by the F.B.I. on October 21, 1966. On October 20, 1966, he was questioned in regard to the robbery of Northern Illinois Corporation and was identified by certain witnesses. However, no charges were placed against him for this offense until an indictment was returned against him on February 20, 1967. He relies on *People v. Fosdick, 36 Ill.2d 524,* but there the defendant was served with an arrest warrant issued upon a complaint for rape which was filed in Champaign County while he was under Federal arrest in that county. The charge was subsequently dismissed to

allow DeWitt County to take the defendant for prosecution on another charge, and new, but identical, charges were filed against the defendant in Champaign County, where custody had previously been acquired but voluntarily relinquished. In *Fosdick* we held that the voluntary dismissal of the charges against the defendant on the motion of the State and without notice to the defendant could not be used to evade the provisions of the 120-day rule. The rationale of *Fosdick* should not be applied in the case at bar, since LaSalle County did not voluntarily relinquish its custody of the defendant to the Federal authorities. In *People v. Jones, 33 Ill.2d 357,* at page *361,* we stated: "It is well settled that it is incumbent upon the defendant to show, in an application for discharge, that he was committed, gave no bail, and was not tried within 4 months thereafter, and that delay of trial did not happen on his application. Further, the record must affirmatively establish these facts. [Citations.]" Here the record reflects that the defendant was indicted and taken in custody for this offense on February 20, 1967 and that his trial began on June 14, 1967. Thus, he was tried within the 120 day requirement.

Since the record discloses no error, the judgment of the circuit court of LaSalle County is affirmed.

*Judgment affirmed.*

MR. JUSTICE RYAN took no part in the consideration or decision of this case.