THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARMECITA WILLIAMS, Defendant-Appellant.

First District (4th Division)   No. 1—05—0810

Opinion filed June 30, 2009.

MURPHY, J., dissenting.

Michael J. Pelletier and Brian A. McNeil, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (James E. Fitzgerald, Alan J. Spellberg, and Rimas F. Cernius, Assistant State's Attorneys, of counsel), for the People.

JUSTICE NEVILLE delivered the opinion of the court:

On September 30, 1998, codefendants Gregory Stroud, Carmecita Williams, Sean Stroud[1], and Dwight Chandler[2] were charged with violating the criminal drug conspiracy statute. 720 ILCS 570/405.1 (West 1998). In addition, Williams was also charged with official misconduct. 720 ILCS 5/33—3(b) (West 1998). At the conclusion of the State's case, the trial court granted Williams' motion for a directed verdict on the criminal drug conspiracy count. After a joint bench trial, the trial court found Williams guilty of official misconduct. The trial court sentenced Williams to 24 months' probation and 250 hours of community service.

On appeal, Williams presents four issues for our review: (1) whether a person must violate a law in order to be guilty of official misconduct (720 ILCS 5/33—3(b) (West 1998)); (2) whether the State proved her guilty of official misconduct beyond a reasonable doubt; (3) whether the official misconduct statute is unconstitutional because it is overbroad and vague; and (4) whether trial counsel was ineffective for failing to file a motion to dismiss the fatally defective indictment. We find that Williams did not violate a law; therefore, we reverse Williams' conviction and vacate her sentence.

---

[1]The plaintiffs had filed for injunctive relief against Highlands, and the cases were consolidated for review.

[2]Dwight Chandler's motion for a directed verdict was also granted at the conclusion of the State's case.

# I. BACKGROUND

Williams was a suspect in an undercover investigation of an alleged drug ring. Williams was charged with criminal drug conspiracy and official misconduct. The official misconduct indictment alleged that Williams:

> "A public employee, namely an employee of the village of Glenwood, Illinois, in her official capacity as police dispatcher knowingly performed an act which she knew is forbidden by law to perform, to wit: she notified Greg Stroud about police activity near his residence in South Holland, Illinois, in order to facilitate illegal drug-dealing by Greg Stroud, in violation of Chapter 720, Section 5/33—3(b) of the Illinois Compiled Statutes 1997 as amended ***."

## A. The State's Case

Alex DiMare, a retired deputy chief of the Glenwood police department, testified that Williams was hired in October 1997 as a radio dispatcher in the communications room of the police department. As a dispatcher, Williams disseminated information gathered from the public to the police or she disseminated internal information from the department to the officers. When Williams was hired, she was told, both orally and in writing, the rules and regulations of the department and given instructions about confidential information. DiMare identified exhibit 30 as pages from the police department's rules and regulations providing instructions for the dissemination of confidential information.

DiMare testified that during Williams' tenure with the department, he spoke with Williams on the telephone several times and was familiar with her voice. After the State played the tapes from the intercepted telephone conversations, DiMare testified that he recognized Williams' voice. DiMare identified a time card for Williams that indicated she was at work on July 12, 1998. DiMare also verified that on July 12, 1998, the South Suburban Emergency Response Team (SERT) was assisting the police department with a barricaded subject and that it was the dispatcher's responsibility to notify members of the SERT team and the local agencies. DiMare further testified that the information Williams gave Stroud was confidential and that she violated the police department's rules and regulations regarding the dissemination of confidential information. Dimare opined that Williams jeopardized the investigation and the officers' safety.

## B. Williams' Case

Williams testified that Stroud is the father of her 14-year-old son. Williams also testified that on July 12, 1998, she was working full time as a dispatcher for the Glenwood police department and made

two telephone calls to Stroud from work and one call from her home. Williams explained that she made the calls because her son told her that Stroud's son was listening to a police scanner, which Williams found to be suspicious. Williams testified that she made the calls and hoped that Stroud would tell her if something suspicious was going on at his house. Williams testified that she did not receive any dispatch or disclosure that the police were at the college conducting surveillance on the day she made the telephone calls. She further testified that she did not know Stroud was dealing narcotics and she did not make the phone calls in order to facilitate any narcotics dealing. On cross-examination, Williams testified that she made up the statement that there were "eyes staged at the college," but that she obtained the information regarding the SERT team while she was at work. She acknowledged that she was told about the rules and regulations discussing confidential information, but she claimed that she did not give out any confidential information.

The trial court found Williams guilty of official misconduct and sentenced her to 24 months' probation and 250 hours of community service. Williams filed a posttrial motion and argued that the State failed to prove her guilty beyond a reasonable doubt. The trial court denied the motion.

## II. ANALYSIS

Williams contends the State failed to prove her guilty beyond a reasonable doubt of official misconduct. Specifically, she contends that, assuming she disseminated confidential information, the State failed to prove that her acts violated a "law" as required by the official misconduct statute. The State maintains that it proved Williams guilty of official misconduct because Williams violated the rules and regulations of the Glenwood police department by disseminating confidential information to Stroud.

### A. The Standard of Review

"In assessing whether the evidence was sufficient to sustain a verdict, a reviewing court's inquiry is ' "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.)' " *People v. Cardamone*, 232 Ill. 2d 504, 511 (2009), quoting *People v. Bush*, 214 Ill. 2d 318, 326 (2005), quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Before we decide whether the evidence was sufficient to establish Williams' guilt of official misconduct, we must determine, as Williams requests, whether her acts violated a "law."

In order to determine if Williams' acts violated a "law," this court must construe the word "law" in the official misconduct statute. Therefore, because construing the word "law" presents this court with a legal question and not a factual question regarding the sufficiency of the evidence, our review is also *de novo*. *People v. Grever*, 222 Ill. 2d 321, 328 (2006), citing *People v. Collins*, 214 Ill. 2d 206, 214 (2005).

## B. The Official Misconduct Statute Requires Public Officials to Commit Acts That Violate Laws

■ Section 33—3(b) of the Criminal Code of 1961 provides that "[a] public officer or employee commits misconduct when, in his official capacity, he *** [k]nowingly performs an act which he knows he is forbidden by law to perform." 720 ILCS 5/33—3(b) (West 1998). The official misconduct statute clearly requires the knowing performance of an act forbidden by "law." 720 ILCS 5/33—3(b) (West 1998). In *Grever*, the Illinois Supreme Court held that the official misconduct statute requires the charging instrument to specify the "law" allegedly violated in the course of committing the offense. *Grever*, 222 Ill. 2d at 335. If the official misconduct statute requires the public official to perform an act forbidden by "law" and, if the *Grever* court requires the indictment to specify the "law" the public official has violated in the course of committing the offense, then a "law" other than the official misconduct law must be violated to commit the offense of official misconduct. *Grever*, 222 Ill. 2d at 335; 720 ILCS 5/33—3(b) (West 1998). Therefore, we hold that the official misconduct statute is violated (1) when a public officer or employee knowingly commits an act that violates a "law," and (2) when the act that violates a law is committed, the public officer or employee is acting in his official capacity. *Grever*, 222 Ill. 2d at 335; 720 ILCS 5/33—3(b) (West 1998).

## C. The Sufficiency of the Evidence

■ Having determined that a law must be violated to be convicted of official misconduct, we must consider the evidence presented by the State. The State called DiMare, a former Glenwood police officer, to testify about the Glenwood police department's rules and regulations. DiMare read the following rules and regulations from the Glenwood police department into evidence:

> "Section one of the department rules and regulations provides that members shall treat as confidential the official business of the police department and shall not reveal police information outside the department except as provided elsewhere by the rules and regulations as required by law or competent authority. Information contained in the police reports, other information ordinarily acces-

sible only to members of the department, shall be confidential. Names of informants, complainants, witnesses, and other persons known to the police are to be considered confidential. Silence shall be maintained to safeguard such information unless authorized by the commanding officer.

Section three of the department rules and regulations provides that members shall not discuss or impart confidential information to anyone except those whom it was intended or as directed to by their commanding officers or under the due process of law.

Section four of the rules and regulations provides that members shall not communicate information which may delay arrest or aid the person to escape, destroy evidence, or remove stolen property. They shall not communicate information regarding an arrest or a case to which they are assigned except with the consent of their commanding officers. Members shall not communicate information relating to proposed or actual arrests or cases investigated or to be investigated except to the arresting officers or the officers assigned to that case or the commanding officer. They shall not give information or refer to any case outside the department or agency except through official channels.

Section five of the rules and regulations provides that members shall not make known to any person the contents of any directive order which they may receive unless required by the nature of the order."

## 1. The Police Department's Rules and Regulations Are Not Laws

First, because the Glenwood police department's rules and regulations were introduced into evidence, we must decide whether the rules and regulations are "laws" within the purview of the official misconduct statute. The official misconduct statute provides, as previously pointed out, that "[a] public officer or employee commits misconduct when, in his official capacity, he *** [k]nowingly performs an act which he knows he is forbidden by law to perform." 720 ILCS 5/33—3(b) (West 1998). We note that Williams does not challenge the fact that she has to be a public employee to violate the official misconduct statute. We note, however, that there is no violation of the official misconduct statute unless the defendant is a public official or public employee. 720 ILCS 5/33—3(b) (West 1998). Therefore, after reviewing the facts, we find that Williams was a public employee because (1) she was authorized to perform official functions (dispatched information for the Glenwood police department), and (2) she was paid by Glenwood, a municipality of the State. See 720 ILCS 5/2—17 (West 1998).

While the official misconduct statute uses the word "law" (720 ILCS 5/33—3(b) (West 1998)), the Criminal Code does not define the word "law." See 720 ILCS 5/1—1 *et seq.* (West 1998). We note, however, that the Illinois Supreme Court has held that the term "law" includes a civil or penal statute, supreme court rule, administrative rule or regulation, or tenent of professional responsibility. See *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 506 (1991), citing *People v. Bassett*, 169 Ill. App. 3d 232, 235 (1988); *People v. Weber*, 133 Ill. App. 3d 686, 690-91 (1985) ("law" includes civil or penal statute, supreme court rule, administrative rule or regulation, or tenet of professional code). Finding no definition for the word "law" in the Criminal Code, we will use the *Fellhauer* court's definition of the word "law" to determine whether the Glenwood police department's rules and regulations are "laws." We find that the Glenwood police department's rules and regulations are not civil statutes (735 ILCS 5/1—101 *et seq.* (West 1998)); they are not penal statutes (720 ILCS 5/1—1 *et seq.* (West 1998)); they are not supreme court rules (see 134 Ill. 2d R. 1); they are not administrative rules or regulations (5 ILCS 100/1—1 *et seq.* (West 1998)); and they are not tenents of professional responsibility. 134 Ill. 2d R. 1.1. Accordingly, we hold that the Glenwood police department's rules and regulations are not "laws" as defined by the supreme court in *Fellhauer*. *Fellhauer*, 142 Ill. 2d at 506.

Nevertheless, the State insists that the Glenwood police department's rules and regulations were administrative rules and regulations. We note that an administrative agency in the proper exercise of its rulemaking power promulgates rules and regulations, which are an expression of legislative policy. *People v. Becker*, 315 Ill. App. 3d 980, 1000 (2000). We also note that "[a]dministrative rules and regulations have the force and effect of law and, like a statute, enjoy a presumption of validity." *Becker*, 315 Ill. App. 3d at 1000. The Criminal Code does not define the term "agency." 720 ILCS 5/1—1 *et seq.* (West 1998). However, the Illinois Administrative Procedure Act defines an "agency" as "each administrative unit or corporate outgrowth of the State government that is created by or pursuant to statute, *other than units of local government* and their officers, school districts, and boards of election commissioners." (Emphasis added.) 5 ILCS 100/1—20 (West 1998). The Illinois Constitution defines "[u]nits of local government" as "counties, municipalities, townships, special districts, and units, designated as units of local government by law, which exercise limited governmental powers or powers in respect to limited governmental subjects, but does not include school districts." Ill. Const. 1970, art. VII, §1. The Illinois Constitution also defines "[m]unicipalities" as "cities, villages and incorporated towns." Ill. Const. 1970, art. VII, §1.

Therefore, we find that Glenwood is a municipality (65 ILCS 5/2— 3—1 (West 1998) (incorporation of town as a village occurs after the submission of a question to the electors)), and it is not an administrative agency that was created by or pursuant to a statute with the power to promulgate rules or regulations. 5 ILCS 100/1—20 (West 1998); Ill. Const. 1970, art. VII, §1.

Next, we find that the Glenwood police department was created by the municipality of Glenwood, a unit of local government, and not by a state statute. See 65 ILCS 5/11—1—1 (West 1998) (the corporate authorities of each municipality may pass and enforce all necessary police ordinances). The Glenwood police department promulgated the department's rules and regulations. Therefore, because neither the municipality of Glenwood nor its police department is an administrative agency, the Glenwood police department's rules and regulations are not administrative rules or regulations that are an expression of legislative policy and they do not have the force of law. See *Carver v. Nall*, 186 Ill. 2d 554, 561 (1999) (quoting and applying section 1—20 of the Administrative Procedure Act (5 ILCS 100/1—20 (West 1996))), *overruled on other grounds, Nudell v. Forest Preserve District*, 207 Ill. 2d 409 (2003).

## 2. The Acts Performed Must Violate Laws

■ Second, we must examine Williams' acts. In order for Williams to be found guilty of official misconduct, the State had to prove (1) that Williams performed an act that violated a "law," and (2) that when Williams committed an act that violated a "law," she was a public employee. 720 ILCS 5/33—3(b) (West 1998). While we need not determine the validity of the indictment for purposes of this appeal, we examine the indictment to determine the "law" Williams is alleged to have violated. We note that the indictment for official misconduct did not allege that Williams violated a police department rule or regulation. Instead, the indictment simply alleged that Williams "knowingly performed an act which she knew is forbidden by law to perform, to wit: she notified Greg Stroud about police activity near his residence in South Holland, Illinois, in order to facilitate illegal drug-dealing by Greg Stroud, in violation of Chapter 720, Section 5/33— 3(b) of the Illinois Compiled Statutes 1997 as amended." As previously noted, the *Grever* court held that the official misconduct statute requires the charging instrument to specify the law allegedly violated in the course of committing the offense. *Grever*, 222 Ill. 2d at 335. Here, the only "law" referred to in the indictment is the official misconduct statute. The official misconduct's statute's requirement that the public employee perform an act forbidden by "law" would

have to be an act forbidden by a "law" other than the official misconduct statute. 720 ILCS 5/33—3(b) (West 1998). However, by only presenting evidence that Williams violated the Glenwood police department's rules and regulations, which are not "laws" as defined by *Fellhauer* (*Fellhauer*, 142 Ill. 2d at 506), the State failed to present evidence which established that Williams performed an act that is forbidden by a "law." Accordingly, we hold that Williams did not violate the official misconduct statute because there is no evidence in the record that she performed an act forbidden by a "law."

### 3. Laws Are Promulgated by the Legislature

The dissent relies on DiMare's testimony[3] and takes the position, based upon article VII of the Illinois Constitution, that the Village of Glenwood is a home rule municipality. Ill. Const. 1970, art. VII, §6. Therefore, the dissent reasons (1) that the confidentiality rules Williams is alleged to have violated are part of the Village of Glenwood police department's rules and regulations[4], (2) that the confidentiality rules were approved and codified as an ordinance by a home rule municipality, and (3) that a violation of the ordinance is a violation of a "law" within the meaning of the official misconduct statute. 720 ILCS 5/33—3(b) (West 1998). An examination of the Illinois Constitution reveals that only the legislature promulgates laws. See Ill. Const. 1970, art. IV, §§8(b), (c) (the General Assembly shall enact laws only by bill and no bill shall become a law without the concurrence of a

---

[3]The dissent relies on DiMare, the former Glenwood police department official, who testified that the Glenwood police department's rules and regulations applied to Williams. This court will not rely on DiMare's interpretation of the Glenwood police department's rules and regulations. The interpretation of a statute or rules and regulations raises a question of law over which this court has *de novo* review; therefore, we will ignore DiMare's lay opinion on an ultimate issue: whether the Glenwood police department's rules and regulations apply to Williams. *People v. Parcel of Property Commonly Known as 1945 North 31st Street, Decatur, Macon County, Illinois*, 217 Ill. 2d 481, 499 (2005), citing *Petersen v. Wallach*, 198 Ill. 2d 439, 444 (2002); *In re Marriage of Rogers*, 213 Ill. 2d 129, 135-36 (2004) (how a statute is interpreted is not a matter left to the trial court's discretion).

[4]According to the Glenwood Municipal Code, the Glenwood police department's rules and regulations apply to members of the police department, which includes: (1) one chief of police, (2) one deputy chief of police, (3) 4 sergeants and 19 patrol officers, and (4) such other members as may be provided for from time to time by the village president and board of trustees. Village of Glenwood Municipal Code art. II, §§58—31, 58—42 (eff. May 1, 2007). Civilian employees, like Williams, are not members of the police department. Therefore, the rules and regulations do not apply to Williams.

majority of the members elected to each house). Further examination of the Illinois Constitution reveals that home rule units of government, including municipalities, promulgate ordinances. See Ill. Const. 1970, art. VII, §6(c) (article VII delineates the powers of home rule units and provides that municipalities promulgate ordinances). The Illinois Constitution makes it clear that only the legislature promulgates laws and that a home rule municipality only promulgates ordinances. Compare Ill. Const. 1970, art. IV, §§8(b), (c); Ill. Const. 1970, art. VII, §6(c). Therefore, we find that even if, as the dissent suggests, the Glenwood police department's rules and regulations are ordinances, the police department's rules and regulations are not "laws." Ill. Const. 1970, art. IV, §§8(b), (c); Ill. Const. 1970, art. VII, §6(c). Accordingly, because the Glenwood police department's rules and regulations are not laws, if the police department's rules and regulations are violated, there is no violation of the official misconduct statute. Compare Ill. Const. 1970, art. IV, §§8(b), (c), with Ill. Const. 1970, art. VII, §6(c); see also 720 ILCS 5/33—3(b) (West 1998).

## D. A Recent Supreme Court Decision

We note that the Illinois Supreme Court recently decided *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1 (2009), and held that the Residential Tenant Landlord Ordinance imposes a "statutory penalty" within the meaning of section 13—202 of the Code of Civil Procedure (735 ILCS 5/13—202 (West 2004)). Specifically, utilizing the general civil principle of statutory construction that statutes are given their fullest, rather than narrowest, possible meaning, the Illinois Supreme Court found that the legislature intended municipal ordinances and state statutes to be included in the term "statutory" contained in section 13—202 of the Code. *Landis*, 235 Ill. 2d at 11, citing *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 111 (1993), and *Lake County Board of Review v. Property Tax Appeal Board*, 119 Ill. 2d 419, 423 (1988). We note that we are construing the word "law" in a criminal statute, the official misconduct statute. 720 ILCS 5/33—3(b) (West 1998). We also note that in criminal cases, criminal statutes are narrowly construed in favor of the accused. See *United States v. Santos*, 553 U.S. 507, 514, 170 L. Ed. 2d 912, 920, 128 S. Ct. 2020, 2025 (2008) ("The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them"), citing *United States v. Gradwell*, 243 U.S. 476, 485, 61 L. Ed. 857, 864, 37 S. Ct. 407, 410 (1917); *McBoyle v. United States*, 283 U.S. 25, 27, 75 L. Ed. 816, 818-19, 51 S. Ct. 340, 341 (1931); *United States v. Bass*, 404 U.S. 336, 347-49, 30 L. Ed. 2d 488, 496-98, 92 S. Ct. 515, 522-23 (1971); see also *People v. Grever*, 222 Ill. 2d 321,

338 (2006), citing *People v. Christensen*, 102 Ill. 2d 321, 328 (1984) ("We strictly construe criminal statutes in favor of the accused"). Therefore, because the instant case involves the construction of a criminal statute rather than a civil statute, we do not believe that the general civil rule of statutory construction that statutes are given their fullest possible meaning applies to the instant case. Accordingly, we find the civil statutory construction rules used in *Landis* inapplicable to the instant criminal case.

## III. CONCLUSION

■ In conclusion, the official misconduct statute required the State to prove that Williams violated a "law"; the State presented evidence that Williams violated the Glenwood police department's rules and regulations, which are not "laws"; therefore, because the Glenwood police department's rules and regulations, are not "laws," Williams did not violate the official misconduct statute. 720 ILCS 5/33—3(b) (West 1998). Because the State failed to present evidence which established that Williams violated a law as required by the official misconduct statute, we reverse this case for evidentiary insufficiency. *People v. Olivera*, 164 Ill. 2d 382, 393 (1995). When there is evidentiary insufficiency, the only proper remedy is a judgment of acquittal. *Olivera*, 164 Ill. 2d at 393. Accordingly, we reverse Williams' conviction and enter a judgment of acquittal, and we need not address her remaining claims on appeal.

Reversed.

STEELE, J., concurs.

JUSTICE MURPHY, dissenting:

I respectfully dissent from the majority opinion. While the majority has accurately stated the facts, additional facts are helpful to understand the whole picture and my view of this issue. At trial, the State presented extensive evidence to support its case that Stroud led a criminal drug conspiracy by conducting a cocaine distribution ring out of his home and that on the night of July 12, 1998, three calls were intercepted that were attributed to defendant. The first two calls were made from a telephone line registered to the Village of Glenwood at a time that defendant was working as a dispatcher. The third call originated from defendant's personal telephone line. The first call from the village was placed at 9:48 p.m. and the transcript of the phone call reads, in pertinent part:

> "DEFENDANT: Keep your scan[n]er on there is some stuff going on in your area[.]

> MR. STROUD: Say what[?]
> DEFENDANT: Keep your scanner on[.]
> MR. STROUD: What up?
> DEFENDANT: OK I'm at work[.]
> MR. STROUD: What do you hear[?]
> DEFENDANT: I'm at work[.]
> MR. STROUD: OK[.]
> DEFENDANT: OK[.]"

The second recorded call was placed 20 minutes later, at 10:08 p.m., from the same number and the transcript reads in pertinent part:

> "DEFENDANT: You have some eyes staged at the college[.]
> MR. STROUD: Say again[.]
> DEFENDANT: At the college[.]
> MR. STROUD: At the college[.]
> DEFENDANT: Yeah[.]
> MR. STROUD: What!—A [b]urglary or something?
> DEFENDANT: Huh!—No—Some eyes[.] You know what I'm [s]aying?
> MR. STROUD: Yeah[.]
> DEFENDANT: At the co—co—co—
> MR. STROUD: I know what you're saying[.]
> DEFENDANT: OK[.]
> MR. STROUD: Thanks[.]
> DEFENDANT: Don't worry about that other stuff you're hearing about the barricaded subject that's not what I'm talking about[.]
> MR. STROUD: Yeah—Yeah when you get off call me[.]
> DEFENDANT: I sure will[.]"

The final call came from defendant's home telephone number and was intercepted at 11:30 p.m. on July 12, 1998, and the transcript of the call reads, in pertinent part:

> "MR. STROUD: Yeah[.]
> DEFENDANT: Yeah it's me[.]
> MR. STROUD: What up?
> DEFENDANT: Uh—I don't know exactly what—what's going on—It ain't like I really heard nothing[.] It's like OK this guy over there on 160 something and South Park he done barricade his house—Barricade his self in the house and we had to send a SERT team over there so we—
> MR. STROUD: You all district go that far?
> DEFENDANT: Huh?
> MR. STROUD: You all district go that far?
> DEFENDANT: Yeah we all District 3—Even South Holland[.]
> MR. STROUD: OK[.]

DEFENDANT: And uh—We send a SERT team in the area we have to let any agents know in the area that we're coming through and there'll be a lot of radio traffic so either they can change frequencies or whatever and I know I had to send it via computer[.]

MR. STROUD: Alright[.]

DEFENDANT: I had to send it over to they use posts like post one—post two for locations[.]

MR. STROUD: Alright[.]

DEFENDANT: I just so happen to know where post 20 is and that's South Suburban College[.]

MR. STROUD: Uh huh[.]

DEFENDANT: So I'm not sure what agency you know if there's FBI—DEA—or ATF or whatever but we just know there's agents in the area—Eh you know and they at South Suburban cause that's where I had to send the message to[.]

\* \* \*

MR. STROUD: Huh?—Would have to be one of them ATF or FBI?

DEFENDANT: Yeah—It's one of them it's it's either ATF[,] FBI or DEA cause those are the only ones that let us know where they at[.]

MR. STROUD: OK[.]

DEFENDANT: Those three agents you know those three departments will let us know that they in the area not exactly where they at but they in the area so like I said they give us different posts they'll—

MR. STROUD: Now what—What frequency frequency—X3 (stuttering) is the one[?]

\* \* \*

DEFENDANT: OK you pick up Hazelcrest[,] Homewood[,] Glenwood—Thornton and Glenwood is in there[.]

MR. STROUD: OK—(Unintelligible) See what that's about let me know[.]

DEFENDANT: Yeah basically they probably won't I probably won't hear nothing but if I do I'll let you know[.]

MR. STROUD: OK bet[.]

DEFENDANT: Alright[.]

MR. STROUD: Everybody alright?

DEFENDANT: Yeah they OK[.]

MR. STROUD: Oke Doke[.]

DEFENDANT: Alright[.]

MR. STROUD: Hey thanks[.]"

Defendant admitted that she made these three phone calls and that she knew Stroud had a police scanner. Defendant testified that

she did not know he was a narcotics dealer. Defendant claimed that she did not know whether police or agents were staged near Stroud's home but she was just "throwing something at him." Defendant testified that she called about the nearby barricade situation and made up the other information to give him the impression police were watching and see if he was doing anything illegal.

On cross-examination, defendant admitted that when she started working for the police department she was informed of the rules of the department and given a written copy of the rules. Defendant testified that she was told what confidential information was and that it was a violation of the rules to discuss or impart confidential information to anyone except those to whom the information was directed. Defendant admitted that this policy was important to ensure the safety of policemen in their work. However, defendant reiterated her claim that she did not disclose any confidential information.

Alex DiMare testified that dispatchers are civilian public employees who are responsible for disseminating information amongst police officers. DiMare testified that all employees of the department are trained and given verbal and written materials regarding the department's rules and regulations. DiMare testified that those trainings and materials specifically cover the department's rules and policy concerning confidential information. DiMare testified that the rules and regulations were adopted by the village trustees in 1985 and in effect from that time through DiMare's retirement on June 28, 2000.

As ordered by this court following oral argument, the parties submitted supplemental briefs on the issue of whether the Glenwood police department's rules and regulations were "law" for purposes of the official misconduct statute. The State provided copies of the Village of Glenwood ordinances covering the police department. In addition, the State provided the minutes of the November 19, 1985, meeting where the village trustees approved the rules and regulations package, as testified to by DiMare. Based on this information and the actions of the defendant, I believe the conviction for official misconduct should be affirmed. The key differences I have with the majority opinion are the exclusion of the codified rules and regulations from the definition of "law" and the use of the rules and regulations to exclude defendant as a civilian employee.

### 1. The Village of Glenwood Police Department Rules and Regulations

The official misconduct statute was designed to prevent public officials from abusing their position in violation of the law for personal gain or criminal enterprise. *Fellhauer v. City of Geneva*, 142 Ill. 2d

495, 506 (1991). While "law" is not defined in the statute, the majority notes that our supreme court stated that a violation of the statute may arise from behavior forbidden by statute, supreme court rule, administrative rules and regulations, or tenets of a professional code. *Fellhauer*, 142 Ill. 2d at 506. They conclude that affirming defendant's conviction based on the police department rules and regulations would be too far an extension from the already expansive reading of "law" by the *Fellhauer* court.

The majority runs through constitutional and statutory provisions to demonstrate how local ordinances do not fit within the categories enumerated in *Fellhauer*. The majority also distinguishes the recent finding of our supreme court that the legislature intended to include municipal ordinances and state statutes in the term "statutory" contained in the limitations provision of section 13—202 of our Code of Civil Procedure because it followed the principle of giving statutes their fullest possible meaning. *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 11 (2009). In the absence of proof that the legislature intended a narrower meaning of the ambiguous term statutory, the court followed the broader interpretation of statutory found in numerous sources that hold municipal ordinances as laws of the state.

I disagree with the majority's view that the ordinance must be shoehorned into the language of *Fellhauer* or that *Landis* must be distinguished because this case involves a criminal statute. Rather, I believe that our supreme court's subsequent decision provided guidance that this approach is too narrow and the rules and regulations at issue here should be considered laws. In fact, both the majority and dissent in *Landis* describe ordinances as "laws," the simple requirement in this case. *Landis*, 235 Ill. 2d at 9-13, 17-18.

In *People v. Howard*, 228 Ill. 2d 428 (2008), our supreme court recently considered what constitutes a predicate unlawful act for purposes of section 33—3(c) of the official misconduct statute. In finding an indictment for the defendant's use of a city credit card for personal items in violation of the state constitution sufficient, the *Howard* court considered and expanded the holdings in *Fellhauer* and *People v. Grever*, 222 Ill. 2d 321 (2006). *Howard*, 228 Ill. 2d at 432-33. In *Grever*, the court refused to impose criminal liability under the official misconduct statute based upon the "amorphous concept of a 'breach of fiduciary duty.' " *Grever*, 222 Ill. 2d at 338. The *Howard* court found that a violation of the Illinois Constitution, as the supreme law of this state, was not an amorphous concept and could serve as a predicate act. The court concluded this was consistent with the finding in *Grever* that a violation need not be specifically described in the

Criminal Code. *Howard*, 228 Ill. 2d at 437, quoting *Grever*, 222 Ill. 2d at 337.

The *Howard* court noted its concern that such a ruling could enhance the specter of overzealous prosecution of official misconduct allegations. However, it softened this concern with the reality that winning a conviction under the statute is not a simple matter, "particularly if a prosecutor should attempt to utilize the statute without considering that its reach is not limitless." *Howard*, 228 Ill. 2d at 438. Furthermore, the court pointed out that there is no *de minimis* exception within the statute and indicated this issue may only be considered by the legislature. The court concluded that this issue was ripe for such review and strongly suggested that this occur. *Howard*, 228 Ill. 2d at 438-39.

An official misconduct charge may also be based on an administrative rule or regulation, even absent any penalty provision for that rule. *People v. Becker*, 315 Ill. App. 3d 980, 1000 (2000). Such a rule or regulation enjoys a presumption of validity and has the force and effect of law. *Becker*, 315 Ill. App. 3d at 1000. The Village of Glenwood is a home rule community and thus, under article VII of the Illinois Constitution of 1970, has "the same powers as the sovereign except where such powers are limited by the General Assembly" which must be construed liberally. *City of Urbana v. Houser*, 67 Ill. 2d 268, 273 (1977), citing Ill. Const. 1970, art. VII, §§6(a), (i), (m). According to the *Houser* court, "[i]t requires no strong prisms to see the breadth and depth of the powers of home rule units." *Houser*, 67 Ill. 2d at 273.

While not a state statute or administrative rule, the rules and regulations are approved and codified as an ordinance by a home rule community and a patently important component of protecting the public safety in the Village of Glenwood. As in *Howard*, violation of these rules is not an amorphous concept and, with the same powers as the sovereign, the village is authorized by statute and the state constitution to pass and enforce ordinances such as these at issue. Limiting the reach of the official misconduct statute in this manner would emasculate municipalities and run counter to the purpose of that rule, but also the clear authority vested by the legislature and constitution to home rule units.

## 2. Application of Rules and Regulations to Defendant

The majority summarily asserts in footnote 4 that, although she was a public employee, defendant was not a member of the police department and the rules and regulations therefore did not apply to her. Citing to the Village of Glenwood Municipal Code, the majority notes it provides the police department "shall consist of one chief of

police, one deputy chief of police, four sergeants and 19 patrol officers, and such other members as may be provided for from time to time by the village president and board of trustees." Village of Glenwood Municipal Code art. II, §58—31 (eff. May 1, 2007). The majority concludes that, because defendant was a civilian employee she was not a member of the police department and the rules and regulations did not apply to her.

I believe that this argument runs counter to common sense and the testimony at trial. Having determined the rules and regulations are laws, I would apply them to defendant. There is no dispute that defendant was a public employee as a dispatcher for the Glenwood police department. DiMare testified that all employees of the police department are verbally instructed that the dissemination of confidential information is prohibited. As detailed above, DiMare read into the record the portions of the rules and regulations covering this issue and testified that all employees are given paper copies of these rules and that the rules apply to these employees. DiMare opined that defendant disclosed confidential information to Stroud and that this jeopardized the ongoing operation at South Suburban College, resulting in a change in the staging area by the police department.

Defendant testified that she was trained on the rules and regulations, including the confidentiality rules, when she started working for the Glenwood police department. Defendant further admitted that these rules banned the dissemination of confidential information or any information that may delay arrest or aid a person to escape. Defendant stated that she understood the public safety and the safety of police officers would be compromised if these rules were violated.

Accordingly, the testimony established that: the police department considered dispatchers as members that are subject to the rules and regulations; the rules were imparted in training and in writing; and defendant understood the rules and that they applied to her. Furthermore, the nature of defendant's duties as a radio dispatcher naturally lead to the requirement that confidentiality rules apply to that position. Strictly construing the municipal code allows for the logical inference that a dispatcher who is privy to the confidential workings of the police department is considered a member of that department and required to follow confidentiality rules.

As the trier of fact, the trial court obviously found defendant incredible and did not accept her claims that she made up the information imparted to Stroud as part of a scheme to find out if he was up to something. Evidence showed that the Glenwood police department and other law enforcement were staged at South Suburban College at that time and this plan was modified after the telephone calls were

94

intercepted. Based on the plain language of the transcripts of the telephone calls and trial testimony, and the inferences that may be made from each, the trial court properly found the State proved the elements of official misconduct against defendant. This was not a violation of an amorphous concept such as a fiduciary duty or simply a rule of employment. The importance of these rules and the ramifications of failing to follow them is obvious as is the application to the position of police dispatcher.

As the able majority opinion and this lengthy dissent evidence, I agree that the underlying issues in determining this matter are not simple. However, sometimes breaking an issue down to the basics is helpful and you can determine that which is difficult to articulate, or, as Justice Potter Stewart famously said of pornography, "I know it when I see it." *Jacobellis v. Ohio*, 378 U.S. 184, 197, 12 L. Ed. 2d 793, 804, 84 S. Ct. 1676, 1683 (1964) (Stewart, J., concurring). Similarly, when a police dispatcher alerts a drug dealer of potential police activity aimed at him, it has to be official misconduct. Put quite simply, if this case is not an example of official misconduct, then I do not know what is.